# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| State of Alaska, | ) |
| Plaintiff, | ) 3:17-CV-00013-JWS |
| vs. | ) ORDER AND OPINION |
| | ) [Re: Motion at docket 6] |
| Ryan Zinke, Secretary of the Interior, et al., | ) |
| Defendants. | ) |

## I. MOTION PRESENTED

The State of Alaska ("State") filed suit in January 2017 to challenge federal regulations, promulgated by the National Park Service ("NPS") and the United States Fish and Wildlife Service ("FWS"), governing sport hunting of predators within Alaska's National Preserves and National Wildlife Refuges. A month later, at docket 6, a group of fifteen conservation organizations ("Applicants") filed a motion to intervene as defendants. The State filed an opposition at docket 46. The named defendants representing the federal government ("Federal Defendants") did not file a response.

Applicants filed their reply at docket 49.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The lawsuit at issue here involves the application of the State's intensive predator management program, which liberalizes hunting regulations for predator species such as wolves and bears in part to improve the levels of prey species for human harvest, on federal lands.  The history of the State's predator management program and the State's attempt to implement the program on federal lands has been thoroughly set forth in the Applicants' memorandum at docket 7 and need not be repeated here.  For purposes of this order, it suffices to say that a state's hunting regulations apply on federal lands only to the extent they are compatible with federal mandates.  Based on perceived incompatibilities, the FWS and NPS objected to the application of the State's regulations that authorized liberalized hunting practices—such as harvesting brown bears over bait; taking wolves and coyotes during denning season; expanding season lengths and increasing bag limits; and authorizing same-day airborne take of bears at registered bait stations—within Alaska's National Preserves and Wildlife Refuges.  The two agencies concluded that these predator-management practices conflict with their mandates to conserve natural diversity and maintain natural predator-prey relationships in National Preserves and Wildlife Refuges.  They requested that the State exclude National Preserves and Wildlife Refuges from the state-authorized practices, but the State refused.  Consequently, the FWS and NPS

promulgated regulations prohibiting such hunting practices within Alaska's National Preserves and Wildlife Refuges, which the State now challenges in this lawsuit[1].

The Applicants seek to intervene by right under Rule 24(a) of the Federal Rules of Civil Procedure or, alternatively, by permission under Rule 24(b) in order to defend the federal regulations. They contend that intervention in the lawsuit will allow them to "protect their interest in the wildlife, habitat, and wilderness values of the National Preserves and National Wildlife Refuges in Alaska from State-authorized sport hunting methods designed to reduce predator population and artificially inflate prey species."[2]

### III. DISCUSSION

**Intervention by right**

Rule 24(a) requires the court to grant intervention to anyone who (1) submits a timely motion; (2) claims an interest relating to the property or transaction that is the subject of the action; (3) is so situated that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect its interest; and (4) is not adequately represented by the existing parties.[3] "While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention."[4] Here, there is no dispute as to the motion's timeliness: it was filed less than a month after the State's complaint and before

---

[1] The State's challenge to the FWS regulations has since become moot given House Resolution 69, which nullifies those regulations. *See infra* pp. 5-6 and note 13.

[2] Doc. 7 at p. 3.

[3] Fed. R. Civ. P. 24(a)(2); *see also Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

[4] *Citizens for Balanced Use,* 647 F.3d at 897.

the Federal Defendants filed an answer. Furthermore, the State does not challenge the Applicants' argument that they have a significant protectable interest in the action, namely an "interest in protecting the natural balance of predators in National Preserves and Wildlife Refuges," nor does it challenge the Applicants' argument that disposal of this action could practically impair their ability to protect that interest. The only issue raised in the State's opposition is whether the Applicants would be adequately represented by the Federal Defendants.

In making a determination about adequacy of representation under Rule 24(a), the court must consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and wiling to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect."[5] The most important factor to consider when assessing the adequacy of representation is a comparison of the existing parties' interests with the applicant's interests.[6] The burden of showing inadequacy of representation is "minimal."[7] That is, the applicant only needs to show that the existing parties' representation "may be" inadequate.[8] If, however, the applicant for intervention and an existing party have the same "ultimate objective," a presumption of adequacy arises,

---

[5]*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

[6]*Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003).

[7]*Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

[8]*Id.* (citing *Trbovich*, 404 U.S. at 538 n.10).

-4-

and the applicant must rebut that presumption with a compelling showing of inadequate representation.[9]

The State's opposition to the Applicants' motion relies on a presumption of adequacy. It argues that the Applicants share the same "ultimate objective" as the Federal Defendants—defending the legality of the challenged regulations—and therefore a presumption of adequacy exists. They argue that "the Applicants [must] show that their interests would not be protected in the event the regulations are upheld as legally valid, or that the Applicants and [Federal] Defendants have 'fundamentally differing points of view' on the litigation as a whole."[10] The State relies on *Citizens for Balanced Use v. Montana Wilderness Ass'n,* where the Ninth Circuit rejected the plaintiff's argument that the applicant and the federal agency defendant had the same ultimate objective, concluding that the two had "fundamentally differing points of view" regarding the litigation.[11] In that case, the agency adopted the order at issue only after the applicants had forced it to do so through previous litigation and was appealing the decision that forced it to make the rule.[12] The State also cites *County of Fresno v. Andrus*, where the Ninth Circuit concluded that the federal defendant, the Department of the Interior, did not adequately represent the interest of the applicants because it had

---

[9]*Arakaki,* 324 F.3d at 1086; *Citizens for Balanced Use,* 647 F.3d at 898.

[10]Doc. 46 at p. 8. The state cites *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009) and *Citizens for Balanced Use*, 647 F.3d at 899.

[11]647 F.3d at 899.

[12]*Id.*

not appealed the grant of a preliminary injunction and it only began its rulemaking after the applicant brought suit against it.[13]

The Applicants argue that the State has misinterpreted the case law applying the heightened burden. They argue that the cases do not stand for the proposition that an applicant and federal agency share unified objectives simply because they are taking the same position in the litigation. They argue that the cases the State relies on are merely examples of situations where an applicant and a federal defendant have divergent interests and that the cases do not stand for the proposition that a federal defendant and an applicant both seeking to defend regulations share an ultimate objective unless the federal defendant had taken a contrary position prior to the litigation or where there was some delay or reluctance on the part of the defendant in relation to the regulation at issue. The Applicants argue that the analysis regarding the presumption of adequacy is broader and more fact-based, focusing on the existing parties' overall interests and objectives as compared to the applicant's.

The court need not decide whether the State misinterpreted what it means to have the same "ultimate objective." Here, the Federal Defendants' ultimate objective is unknown given that they have not yet filed an answer and did not file any response to the Applicants' motion to intervene. Any assumption that the Federal Defendants would necessarily defend their own regulations is unwarranted here because there has been an administration change since the regulations were promulgated and the President

---

[13]622 F.2d 436, 439 (9th Cir. 1980).

recently signed House Joint Resolution 69, nullifying the challenged FWS regulations.[14] The new administration's nullification of the FWS's regulations relating to the State's predator control program is an action that is detrimental to the Applicants' interests and shows that even if the Federal Defendants once presumably shared the same ultimate objective as to the remaining NPS regulations, it is no longer reasonable to presume as much now. The Federal Defendants' representation of the Applicants' interest may be inadequate given these facts.

Moreover, even if the Federal Defendants plan to defend the remaining NPS regulations and that alone is sufficient under the case law to constitute a unity of objectives for the purposes of applying a presumption of adequacy, the Applicants have made a compelling showing of inadequate representation to rebut that presumption and permit intervention. The signing of House Joint Resolution 69 raises serious doubts about whether the Federal Defendants will make all the same arguments as the Applicants and whether they are still willing to make such arguments. As the Applicants note in their reply, "[i]t is fair to assume that an administration that is willing to nullify the challenged FWS regulations with the stroke of a pen may not vigorously defend similar NPS regulations in this litigation."[15] Evidence of the Federal Defendants' multi-faceted mandates and obligations as compared to the Applicants' more narrow interests—as

---

[14]*See* Press Release, President Donald J. Trump Signs H.J.Res. 69, H.J.Res. 83, H.R. 1228, S.J.Res. 34 into Law (April 3, 2017), https://www.whitehouse.gov/the-press-office/2017/04/03/president-donald-j-trump-signs-hjres-69-hjres-83-hr-1228-sjres-34-law; see also doc. 46 at p. 2 n.3.

[15]Doc. 49 at p. 6.

-7-

thoroughly set forth in the Applicants' reply brief[16]—bolsters the Applicants' argument that there is no guarantee that the Federal Defendants will make all their arguments.

**Permissive Intervention**

Alternatively, even if intervention is not warranted as of right under Rule 24(a), the court exercises its discretion under Rule 24(b) to allow the Applicants to intervene based on the situation presented. Permissive intervention under Rule 24(b) should be granted when the applicant (1) demonstrates an independent ground for jurisdiction; (2) files a timely motion; and (3) presents a claim or defense that shares a common question of law or fact.[17] The State concedes that the Applicants have met these three factors but argues that because the Federal Defendants will adequately defend the NPS regulations, the court should use its discretion to deny intervention. For the same reasons as set forth above, the court concludes that the Applicants should be able to participate in the lawsuit. Indeed, their presence will "assist the court in its orderly procedures leading to the resolution of this case, which [will] impact[] large and varied interests."[18]

---

[16]*Id.* at pp. 7-11.

[17]Fed. R. Civ. P. 24(b)(1)(B); *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).

[18]*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177-78, 1180 (9th Cir. 2011).

## IV. CONCLUSION

Based on the preceding discussion, the Applicants' motion to intervene at docket 6 is GRANTED.

DATED this 3rd day of May 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT