# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

        Plaintiff,

        v.

DAVID L. BERNHARDT, in his official
capacity as Secretary of the U.S.
Department of the Interior, *et al.*,

        Federal Defendants,

        and

ALASKA WILDLIFE ALLIANCE, *et al.*,

        Intervenor-Defendants.

Case No. 3:17-cv-00013-SLG

CONSOLIDATED

---

SAFARI CLUB INTERNATIONAL,

        Plaintiff,

        v.

DAVID L. BERNHARDT, in his official
capacity as Secretary of the U.S.
Department of the Interior, *et al.*,

        Federal Defendants,

        and

ALASKA WILDLIFE ALLIANCE, *et al.*,

        Intervenor-Defendants.

Case No. 3:17-cv-00014-SLG

## <u>ORDER RE MOTIONS FOR SUMMARY JUDGMENT</u>

This is a consolidated action in which the State of Alaska and Safari Club International seek invalidation of portions of the Fish and Wildlife Service's Kenai Rule that prohibit certain hunting activities on the Kenai National Wildlife Refuge.[1] The challenged portions of the Kenai Rule codified restrictions on hunting within the Skilak Wildlife Recreation Area, prohibited certain firearms discharges along the Kenai and Russian rivers, and clarified that hunting brown bears over bait was not permitted on the Kenai National Wildlife Refuge.[2] Briefing on the merits was completed on August 20, 2020.[3] Oral argument was held on September 25, 2020.[4]

## BACKGROUND

The Kenai National Wildlife Refuge ("Kenai NWR") is a 1.92 million-acre refuge located on the Kenai Peninsula in Southcentral Alaska.[5] The refuge was originally called the Kenai National Moose Range and was created in 1941 for the purpose of "protecting the natural breeding and feeding range of the giant Kenai moose on the Kenai Peninsula, which in this area presents . . . an unusual

---

[1] 81 Fed. Reg. 27030; codified at 50 C.F.R. § 36.39.

[2] *See* 50 C.F.R. § 36.39(i)(5)–(6); 81 Fed. Reg. 27030; 81 Fed. Reg. 27043–48; FWL013575–80.

[3] Docket 202.

[4] Docket 215.

[5] FWL013562. "FWL" refers to the U.S. Fish and Wildlife Service's administrative record, which is filed at Docket 207.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 2 of 75

opportunity for the study in its natural environmental of the practical management of a big game species that has considerable local economic value."[6]

The refuge was expanded and renamed as the Kenai NWR by Congress in 1980 with the passage of the Alaska National Interest Lands Conservation Act ("ANILCA").[7] ANILCA also expanded the purposes of the Kenai NWR, identifying them as follows:

> (1) To conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, moose, bears, mountain goats, Dall sheep, wolves and other furbearers, salmonoids and other fish, waterfowl and other migratory and nonmigratory birds;
>
> (2) To fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;
>
> (3) To ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in (1), above, water quality and necessary water quantity within the Refuge;
>
> (4) To provide, in a manner consistent with (1) and (2), above, opportunities for scientific research, interpretation, environmental education, and land management training; and
>
> (5) To provide, in a manner compatible with these purposes, opportunities for fish and wildlife-oriented recreation.[8]

In 1982, the United States Fish and Wildlife Service ("the Service") and the State of Alaska ("the State") entered into a Master Memorandum of Understanding

---

[6] FWL013562 (quoting Exec. Order No. 8979, 6 F.R. 6471 (Dec. 18, 1941)).

[7] Pub. L. No. 96-487, 94 Stat. 2371 (1980) (codified at 16 U.S.C. § 3101 *et. seq.*); FWL004688.

[8] Pub. L. No. 96-487 § 303(4)(B).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 3 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 3 of 75

("MMU") which "reflects the general policy guidelines within which the two agencies agree to operate" with respect to the Kenai NWR.[9] The MMU lays out a cooperative approach under which the Service and the State agree "[t]o consult with each other when developing policy and legislation which affect the attainment of wildlife resource management goals and objectives or management plans."[10] In the MMU, the State agreed "[t]o recognize the Service as the agency with the responsibility . . . on Service lands in Alaska to conserve fish and wildlife and their habitats and regulate human use."[11] The MMU also states that "the taking of fish and wildlife . . . on Service lands in Alaska is authorized in accordance with applicable State and Federal law unless State regulations are found to be incompatible with documented Refuge goals, objectives, or management plans."[12]

ANILCA instructs the United States Secretary of the Interior ("Secretary") to "prepare, and from time to time, revise, a comprehensive conservation plan . . . for each refuge."[13] Between 1980 and 1985, the Service worked with the public and the State to develop the first Comprehensive Conservation Plan ("CCP") for the

---

[9] FWL001551.

[10] FWL001553.

[11] FWL001552.

[12] FWL001553–54.

[13] Pub. L. No. 96-487 § 304(g)(1).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 4 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 4 of 75

Kenai NWR.[14]   The first CCP was completed in 1985.[15]   It offered broad management guidance and provided that "[t]he entire refuge would remain open to hunting and trapping, except for areas where public safety is a concern" as well as "the Skilak Loop Special Management Area, where special restrictions on hunting and trapping will apply."[16]  The CCP provided that the Skilak Loop Special Management Area "would be managed to provide enhanced opportunities for wildlife viewing."[17]  In 1988, this area was renamed the Skilak Wildlife Recreation Area ("Skilak WRA").[18]

Pursuant to the CCP, the Service created a species management plan for the Skilak area to provide "wildlife viewing and interpretation opportunities."[19]  In 1987, the Alaska Board of Game ("BOG")  adopted regulations that had been jointly proposed by the Service and the Alaska Department of Fish and Game; the regulations prohibited trapping, allowed taking of small game by archery, and

---

[14] FWL000980–82.

[15] FWL014229; FWL000982.

[16] FWL014224.

[17] FWL000982.

[18] FWL013571.

[19] FWL000982.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 5 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 5 of 75

provided for a moose hunt by special permit within the Skilak area.[20]  The Service developed public use facilities for the Skilak WRA over the following years.[21]

In 1993, the Service issued nationwide refuge-specific hunting and fishing regulations.[22]  A section titled "General provisions regarding hunting on wildlife refuges" stated that the "unauthorized distribution of bait and the hunting over bait is prohibited on wildlife refuge areas. (Baiting is authorized in accordance with State regulations on national wildlife refuges in Alaska)."[23]  The regulations further provided that "Alaska refuges are opened to hunting, fishing and trapping pursuant to the Alaska National Interest Lands Conservation Act."[24]

In 1997, Congress passed the National Wildlife Refuge System Improvement Act ("Improvement Act").[25]  The Improvement Act consolidated all the various wildlife refuges, wildlife ranges, game ranges, and other areas for the protection of fish and wildlife into the National Wildlife Refuge System.[26]  The system is administered by the Director of the Fish and Wildlife Service.  A provision

---

[20] FWL000982.

[21] FWL000982, FWL013571.

[22] 58 Fed. Reg. 5064–5100.

[23] 58 Fed. Reg. 5065 (codified at 50 C.F.R. § 32.2(h)).

[24] 58 Fed. Reg. 5069 (codified at 50 C.F.R. § 32.21).

[25] Codified at 16 U.S.C. §§ 668dd–668ee.

[26] 16 U.S.C. § 668dd(a)(1).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 6 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 6 of 75

in the Improvement Act states that in the event of a conflict between provisions in the Improvement Act and ANILCA, "the provision in [ANILCA] shall prevail."[27]

The Improvement Act strives for consistency between state and federal hunting regulations, stating that federal regulations "shall be, to the extent practicable, consistent with State fish and wildlife laws, regulations, and management plans."[28] The Act also provides that "compatible wildlife-dependent recreational uses are the priority general public uses of the [National Wildlife Refuge] System and shall receive priority consideration in refuge planning and management."[29] A "compatible use" is defined as "a wildlife-dependent recreational use or any other use of a refuge that, in the sound professional judgment of the Director [of the Fish and Wildlife Service], will not materially interfere with or detract from the fulfillment of the mission of the [National Wildlife Refuge] System or the purposes of the refuge."[30] The Improvement Act additionally provides that "when the Secretary [of the Interior] determines that a proposed wildlife-dependent recreational use is a compatible use within a refuge, that activity should be facilitated, subject to such restrictions or regulations as may

---

[27] Pub. L. No. 105-57 § 9(b), 111 Stat. 1252 (1997) (statutory construction note regarding 16 U.S.C. § 668dd with respect to Alaska).

[28] 16 U.S.C. § 668dd(m).

[29] 16 U.S.C. § 668dd(a)(3)(C).

[30] 16 U.S.C. § 668ee(1).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 7 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 7 of 75

be necessary, reasonable, and appropriate."[31]  However, the Improvement Act also instructs the Director of the Fish and Wildlife Service not to "initiate or permit a new use of a refuge or expand, renew, or extend an existing use of a refuge, unless the Secretary has determined that the use is a compatible use and that the use is not inconsistent with public safety."[32]

In 2007, the Service issued a Compatibility Determination ("CD") pursuant to the Improvement Act that found black bear baiting for the purposes of hunting was a compatible use of the Kenai NWR.[33]  Black bear baiting was permitted by federal regulation in accordance with state regulations.[34]  The CD was limited only to baiting black bears;[35] brown bear baiting in the Game Management Unit that contains the Kenai NWR was not allowed under state law at that time.

In 2007, the Service also published a Revised Final Management Plan for the Skilak WRA.[36]  The Service did so after completing a draft plan and accompanying draft environmental assessment ("EA") in 2006 pursuant to the National Environmental Protection Act ("NEPA") that resulted in a Finding of No

---

[31] 16 U.S.C. § 668dd(a)(3)(D).

[32] 16 U.S.C. § 668dd(d)(3)(A)(i).

[33] FWL000071–72.

[34] FWL000066 ("baiting is authorized in accordance with State regulations on national wildlife refuges in Alaska") (citing 50 C.F.R. § 32.2(h)).

[35] FWL000069.

[36] FWL000976.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 8 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 8 of 75

Significant Impact.[37]  Although the Service considered opening the Skilak WRA to the hunting of small game as well as lynx, coyote, red fox, and squirrel, that proposal was ultimately rejected.[38]  Instead, the final plan maintained the Skilak WRA as "a special area . . .  that would be managed to increase opportunities for wildlife viewing, and environmental education and interpretation."[39]  However, the Service did approve a limited "youth-only" small game firearms hunt.[40]  That same year, the BOG adopted State regulations that were consistent with the Revised Final Management Plan.[41]

In 2010, the Service issued an updated CCP for the Kenai NWR.[42]  The Service completed an Environmental Impact Statement ("EIS") regarding the CCP pursuant to NEPA.[43]  The EIS considered five different alternatives; in each alternative, the Skilak WRA would be "managed to provide enhanced opportunities for wildlife viewing, environmental education, interpretation, and photography."[44]

---

[37] FWL001042–59.

[38] FWL001043.

[39] 81 Fed. Reg. 27038; FWL013570.

[40] 81 Fed. Reg. 27038; FWL001044–55, 013570.

[41] 81 Fed. Reg. 27038; FWL013570.

[42] FWL001068; Section 304(g) of ANILCA provides that CCPs should be revised "from time to time."

[43] 81 Fed. Reg. 27033; FWL013565.

[44] FWL000303.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 9 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 9 of 75

In 2013, the BOG proposed new regulations that would allow hunting brown bears over registered black bear baiting stations in the Kenai NWR and open the Skilak WRA to the hunting of wolves, coyote, and lynx in late fall and winter.[45]  In response, the Service sent a letter to the BOG advocating against these proposed changes, explaining that it considered "reducing predator populations in support of intensive management program objectives" to be "the underlying reason for the Board's actions" and that such objectives "fundamentally differ" from the Service's mandates.[46]  The letter also listed regulatory measures the Service intended to take if the BOG adopted the proposals.  These measures would include restricting "the legal take of animals over bait to black bears under terms and conditions of a Special Use Permit" and promulgating "regulations maintaining existing restrictions on hunting and trapping in the [Skilak] WRA."[47]

The BOG adopted the regulations, which became effective on July 1, 2013.[48]  The Service responded by closing the Skilak WRA to hunting and trapping on November 10, 2013, just before the State-authorized late fall and winter hunting season began.[49]  The Service also blocked the BOG's authorization of brown bear

---

[45] 81 Fed. Reg. 27038–40; FWL013570–72.

[46] FWL002113.

[47] FWL002115.

[48] 81 Fed. Reg. 27038; FWL013570.

[49] 78 Fed. Reg. 66061–62.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 10 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 10 of 75

baiting in the Kenai NWR, although the BOG regulation became effective elsewhere on the Kenai Peninsula.[50]

On May 21, 2015, the Service published a proposed rule, referred to here as the Kenai Rule.[51] Among other provisions, the proposed rule would:

> (2) Codify restrictions on hunting and trapping within the Skilak Wildlife Recreation Area recently established in accordance with the procedures set forth at 50 CFR 36.42 (public participation and closure procedures);
>
> (3) Expand a prohibition on the discharge of firearms to include areas of intensive public use along the Kenai and Russian rivers; [and]
>
> (4) Clarify the intent of an existing regulation addressing hunting over bait.[52]

Regarding the Skilak WRA, the "proposed rule would codify the Service's November 2013 permanent closure . . . to hunting and trapping," with exceptions for the "historical State regulations . . . of hunting of small game with bow and arrow and falconry, moose hunting by permit, and youth-only firearm hunting of small game."[53] The closure was "in response to action taken by the Alaska Board of Game . . . which opened the Skilak Wildlife Recreation Area to taking of lynx,

---

[50] 81 Fed. Reg. 27036–37; FWL013568–69.

[51] 80 Fed. Reg. 29277–86; FWL008725–34.

[52] 80 Fed. Reg. 29278; FWL008726.

[53] 80 Fed. Reg. 29279; FWL008727.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 11 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 11 of 75

coyote, and wolf within the area under State hunting regulations."[54] The Service proposed the regulation because it "determined that this hunting of lynx, coyote, and wolf negatively impacts meeting objectives in approved Refuge management plans to provide enhanced wildlife viewing, environmental education, and interpretation opportunities in the area."[55]

The proposed rule would also "establish a prohibition on the discharge of firearms within ¼ mile of the Kenai and Russian rivers (with the exception of firearms used for dispatching legally trapped animals and use of shotguns for waterfowl hunting) . . . ."[56] This proposed change was intended "to help ensure protection of public safety" on "river corridors [that] receive intensive recreational use for sport fishing from shorelines and boats during open seasons for salmon and resident fish . . . and, on the upper Kenai River for river floating, from late spring to freeze-up."[57]

With respect to bear baiting, the proposed rule would "clarify an existing regulation which allows hunting over bait for the harvest of black bears under the terms and conditions of a special use permit."[58] The proposal explained that "[a]ll

---

[54] 80 Fed. Reg. 29280; FWL008728.

[55] 80 Fed. Reg. 29280; FWL008728.

[56] 80 Fed. Reg. 29279; FWL008727.

[57] 80 Fed. Reg. 29280; FWL008728.

[58] 80 Fed. Reg. 29280; FWL008728.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 12 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 12 of 75

other hunting over bait is in effect prohibited on the Refuge," and that "[t]his clarification is necessary in light of recent action by the Alaska Board of Game to allow for the take of brown bears at registered black bear baiting stations."[59]

The Service concluded that it considered the proposed Kenai Rule to constitute a categorical exclusion under NEPA pursuant to the "Department of the Interior policy in part 516 of the Departmental Manual," which categorically excludes "[t]he issuance of special regulations for public use of Service-managed land, which maintain essentially the permitted level of use and do not continue a level of use that has resulted in adverse environmental effects."[60] The Service stated that the rulemaking supported "the management direction identified through approved Refuge management plans, including the 2010 Kenai NWR Revised CCP and the 2007 Kenai NWR Skilak Recreation Area Revised Final Management Plan."[61] The Service referenced the EIS it had prepared for the 2010 CCP and the EA it had prepared for the Skilak WRA management plan it had completed in October 2006; both documents were prepared after notice and public comment.[62]

During the comment period for the proposed Kenai Rule, the Service received 28 comments from individuals, organizations including Safari Club

---

[59] 80 Fed. Reg. 29280; FWL008728.

[60] 80 Fed. Reg. 29281; FWL008729 (citing 516 Dept. Man. 8.5(C)(3)).

[61] 80 Fed. Reg. 29281; FWL008729.

[62] 80 Fed. Reg. 29281–82; FWL008729–30.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 13 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 13 of 75

International and the Humane Society the United States ("Humane Society"), and the State of Alaska.[63]  The State explained that its "overarching concern with the proposed regulation package is the limited, or in many cases, absence of justification provided in the Notice."[64]   The State opposed the Skilak WRA restrictions on hunting and trapping, maintaining that "the Service is favoring one wildlife dependent recreational use (wildlife viewing) over another (hunting) when both are compatible uses that can be effectively managed to avoid user conflicts" and that "no data has been provided to support this continued closure."[65]   The State also opposed the "expansion of the prohibition [on discharging firearms] for the entire length of the Kenai River adjacent to refuge lands and from the Russian River to the Russian River Falls."[66]  The State explained that "the Notice does not explain why discharging firearms for waterfowl and small game hunting does not pose a safety hazard when the use of firearms to take big game apparently does."[67]

The State also protested the bear baiting proposal.  It maintained that the proposal was not a mere clarification of existing bear baiting rules because "[t]he Notice neglects to inform the public that baiting is allowed on all refuges in Alaska

---

[63] FWL008912—009165.

[64] FWL008984.

[65] FWL008986.

[66] FWL008988.

[67] FWL008988.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 14 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 14 of 75

in accordance with state regulations," and that "at the time the existing Kenai Refuge regulation was promulgated, state regulations only authorized black bear baiting."[68]  Hence, the State asserted that "[r]elying on the existing regulation as justification to prohibit this newly authorized use is inconsistent with Refuge law, regulation, and policy."[69]  The State's nine pages of comments did not reference NEPA.

Safari Club International submitted comments which opposed expanding the prohibition of firearms discharges along the Kenai and Russian rivers, agreeing with the State that "[t]here are no data provided that document a public safety issue, and there is no resource basis for the refuge to enact this prohibition."[70] Safari Club International also opposed the hunting and trapping restrictions in the Skilak WRA, asserting the Service "provided no data to demonstrate an impact to wildlife viewing in this area" and that the "preemptive closures of hunting and trapping opportunities in favor of wildlife viewing are unnecessary and inconsistent with refuge management mandates" in the Improvement Act.[71]  Safari Club International also opposed the proposal to continue the ban on brown bear baiting because "[t]he biological information the [Service] used to justify prohibiting this

---

[68] FWL008989 (citing 50 C.F.R. § 32.2(h)).

[69] FWL008989.

[70] FW00L8928.

[71] FWL008928–29.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 15 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 15 of 75

take of brown bear was inaccurate in terms of comparison to population density in other areas and relationship of conservative harvests to long-term sustainability."[72] Safari Club International's comments did not reference NEPA.

The Humane Society submitted comments requesting a supplemental EA or an EIS pursuant to NEPA that would consider "all the direct, indirect and cumulative impacts to wildlife from the proposed changes to the hunting and trapping regulations."[73]

On May 5, 2016, the Service published the final Kenai Rule.[74] The Kenai Rule includes all of the relevant portions of the proposed rule: a prohibition on hunting within the Skilak WRA with exceptions for moose hunts by special permit, hunting small game by archery and falconry, and limited youth-only small game firearms hunt;[75] a prohibition on hunting animals by bait in the Kenai NWR other than black bears by special permit;[76] and a prohibition on discharging firearms within ¼ mile of the Kenai and Russian rivers with exceptions for dispatching

---

[72] FWL008929–30.

[73] FWL010054.

[74] 81 Fed. Reg. 27030; 50 C.F.R. § 36.39; FWL013562.

[75] 81 Fed. Reg. 27045; 50 C.F.R. § 36.39(i)(6); FWL013577.

[76] 81 Fed. Reg. 27045; 50 C.F.R. § 36.39(i)(5)(ii); FWL013577.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 16 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 16 of 75

lawfully trapped game, using shotguns to hunt waterfowl and small game, and taking game in defense of life and property.[77]

As it had done with the proposed rule, the Service determined that the Kenai Rule constituted a categorical exclusion under NEPA, because it was considered "[t]he issuance of special regulations for public use of Service-managed land, which maintain essentially the permitted level of use and do not continue a level of use that has resulted in adverse environmental effects" under the Department of the Interior departmental manual.[78] The Service additionally determined that the Kenai Rule constituted a categorical exclusion because the rule is "technical and procedural in nature, and the environmental effects are too broad, speculative, or conjectural to lend themselves to meaningful analysis."[79] The Service again explained that the Kenai Rule "supports the Service's management direction identified through . . . the 2010 Kenai NWR revised CCP and the 2007 Kenai NWR Skilak WRA revised final management plan."[80]

In its response to the Humane Society's comment, the Service explained its categorical exclusion determination: "This rulemaking will result in small

---

[77] 81 Fed. Reg. 27045; 50 C.F.R. § 36.39(i)(5)(i); FWL013577.

[78] 81 Fed. Reg. 27043 (citing 516 Dept. Man. 8.5(C)(3) (www.doi.gov/sites/doi.gov/files/elips/documents/516-dm-8-chapter-final-7-29-20.pdf)); FWL013575.

[79] 81 Fed. Reg. 27043 (citing 43 C.F.R. § 46.210); FWL013575.

[80] 81 Fed. Reg. 27043; FWL013575.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 17 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 17 of 75

incremental changes in public use of the Refuge, both increasing and decreasing use, but overall will maintain permitted levels of use and will not continue a level of use that has resulted in adverse environmental impacts."[81]

In 2016, the Service and the Department of the Interior also issued a rule amending national wildlife refuge regulations.[82]   The rule banned brown bear baiting in all Alaska refuges.[83]  The rule also stated:

> We define "natural diversity" in regulation based on the legislative history from ANILCA. Natural diversity means the existence of all fish, wildlife, and plant populations within a particular wildlife refuge system unit in the natural mix and in a healthy condition for the long-term benefit of current and future generations. Managing for natural diversity includes avoiding emphasis of management activities favoring some species to the detriment of others and assuring that habitat diversity is maintained through natural means, avoiding artificial developments and habitat manipulation programs whenever possible.[84]

In 2017, Congress vacated this rule under its authority in the Congressional Review Act.[85]  Congress did not vacate the Kenai Rule.

The State of Alaska and Safari Club International each filed a complaint in this Court challenging the Kenai Rule, seeking declaratory relief, injunctive relief,

---

[81] 81 Fed. Reg. 27033; FWL013565.

[82] 81 Fed. Reg. 52247.

[83] 81 Fed. Reg. 52252.

[84] 81 Fed. Reg. 52252.

[85] Pub. L. No. 115-20, 131 Stat. 86 (2017); 82 Fed. Reg. 52009.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 18 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 18 of 75

and vacatur of the rule.[86]  The cases were consolidated into this action on January 3, 2018.[87]  On January 6, 2020, the State and Safari Club International filed their motion for summary judgment.[88]  Federal Defendants filed a cross-motion for summary judgment on March 9, 2020.[89]  Alaska Wildlife Alliance and several other environmental organizations moved to intervene as defendants on February 8, 2017.[90]  The motion was granted on May 3, 2017.[91]  The Intervenor-Defendants filed a cross-motion for summary judgment on March 16, 2020.[92]

---

[86] Docket 1 at 45–46, ¶¶ A-I; Case No. 3:17-cv-00014, Docket 1 at 48–49, ¶¶ 1–11; Case No. 3:17-cv-00026, Docket 1 at 36, ¶¶ A–D.  Plaintiffs also challenged a separate rule issued by the Service that was invalidated by Presidential approval of a joint resolution during the course of this litigation.  Docket 55.  Plaintiffs additionally challenge a rule propagated by the National Park Service that is not at issue in the instant cross-motions for summary judgment.

[87] Docket 124.  A separate case brought by Alaska Professional Hunters Association, Sportsmen's Alliance Foundation, Joey Klutsch, and Gilbert Huntington had been consolidated into this action but was dismissed as moot on July 8, 2020.  Docket 198.

[88] Docket 170.

[89] Docket 177.  The named Federal Defendants are David Bernhardt, in his official capacity as U.S. Secretary of the Interior; Mitch Ellis, in his official capacity as Chief of Refuges for the Alaska Region of the U.S. Fish and Wildlife Service; Gregory Siekaniec, in his official capacity as Alaska Regional Director of the U.S. Fish and Wildlife Service; Aurelia Skipworth, in her official capacity as Director of U.S. Fish and Wildlife Service; Joel Hard, in his official capacity as acting Alaska Regional Director of the National Park Service; Margaret Everson, in her official capacity as acting Director of the National Park Service; U.S. Fish and Wildlife Service; National Park Service; and U.S. Department of the Interior.

[90] Docket 6.  Intervenor-Defendants are Alaska Wildlife Alliance; Alaskans For Wildlife; Friends of Alaska Wildlife Refuges; Denali Citizens Council; Copper County Alliance; Kachemak Bay Conservation Society; Defenders of Wildlife; National Parks Conservation Association; National Wildlife Refuge Association; Northern Alaska Environmental Association; The Wilderness Society; Wilderness Watch; The Sierra Club; Center for Biological Diversity; and The Humane Society of the United States.

[91] Docket 54.

[92] Docket 184.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 19 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 19 of 75

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the Administrative Procedure Act of its own force may serve as a jurisdictional predicate."[93]

## LEGAL STANDARD

Plaintiffs bring their claims pursuant to the Administrative Procedure Act.[94] Under that statute, a reviewing court shall not set aside an agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[95]   Agency action is arbitrary and capricious if it

> relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it c[an]not be ascribed to a difference in view or the product of agency expertise.[96]

A court's review of whether an agency action is arbitrary and capricious should be "searching and careful," but "narrow," as a court may not substitute its

---

[93] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

[94] Docket 60 at 46, ¶ C.

[95] 5 U.S.C. § 706(2)(A).

[96] *Protect Our Cmtys. Found. v. LaCounte*, 939 F.3d 1029, 1034 (9th Cir. 2019) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 20 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 20 of 75

judgment for that of the administrative agency.[97] Courts will generally "uphold agency decisions so long as the agencies have 'considered the relevant factors and articulated a rational connection between the factors found and the choices made.'"[98] "Agency action is 'not in accordance with the law' when it is in conflict with the language of the statute relied upon by the agency."[99] "Whether agency action is 'not in accordance with law' is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case."[100]

## DISCUSSION

## I. National Environmental Protection Act

The National Environmental Protection Act ("NEPA") established the Council on Environmental Quality ("CEQ") and created procedures that require "that federal agencies take a 'hard look' at the environmental consequences of their actions."[101] NEPA requires that agencies prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of

---

[97] *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

[98] *Protect Our Cmtys. Found.*, 939 F.3d at 1034 (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)).

[99] *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007).

[100] *Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) (citing *Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 537 F.3d 1006, 1014 (9th Cir. 2008)).

[101] *California v. Norton*, 311 F.3d 1162, 1175 (9th Cir. 2002) (quoting *Metcalf v. Daley*, 214 F.3d 1135, 1141 (9th Cir. 2000)); 42 U.S.C. §§ 4321–4370m-12.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 21 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 21 of 75

the human environment."[102]  "'Human environment,' in turn, is defined in NEPA's implementing regulations as 'the natural and physical environment and the relationship of people with that environment."[103]  When an action "is not likely to have significant effects or the significance of the effects is unknown," the CEQ's regulations provide that the "agency shall prepare an environmental assessment for [the] proposed action."[104]  An EA must "provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact."[105]

"For efficiency," the CEQ also instructs agencies to "identify . . . categories of actions that normally do not have a significant effect on the human environment, and therefore do not require preparation of an environmental assessment or environmental impact statement."[106]  Such actions are termed "categorical exclusions."  "However, an agency adopting a categorical exclusion must 'provide for extraordinary circumstances in which a normally excluded action may have a

---

[102] 42 U.S.C. § 4332(C).  *Accord Metcalf*, 214 F.3d at 1142.

[103] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1114 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (quoting 40 C.F.R. § 1508.14).

[104] 40 C.F.R. § 1501.5(a).

[105] 40 C.F.R. § 1501.5(c)(1).

[106] 40 C.F.R. § 1501.4(a).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 22 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 22 of 75

significant environmental effect,'" which triggers the requirement of preparation of an EIS or an EA.[107]

"When an agency decides to proceed with an action in the absence of an EA or EIS, the agency must adequately explain its decision" and "cannot avoid its statutory responsibility under NEPA merely by asserting than an activity it wishes to pursue will have an insignificant effect on the environment."[108]  Instead, it "must supply a convincing statement of reasons why potential effects are insignificant."[109]  In reviewing whether an agency's action is arbitrary or capricious, a court must look to "whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment."[110]  Agency determinations based on consideration of the proper factors are entitled to deference.[111]

### a. Applicability

As a threshold matter, the Court must determine whether NEPA procedures apply to the challenged aspects of the Kenai Rule.  Federal Defendants maintain that NEPA does not apply to the Skilak WRA closure or the brown bear baiting rule because each of those provisions "simply maintain the environmental status quo

---

[107] *Norton*, 311 F.3d at 1168 (quoting 40 C.F.R. § 1508.4).

[108] *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999) (quoting *Jones v. Gordon*, 792 F.2d 821, 828 (9th Cir. 1986)).

[109] *Id.* (quoting *The Steamboaters v. FERC*, 759 F.2d 1382, 1393 (9th Cir. 1985)).

[110] *Id.* (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

[111] *Id.*

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 23 of 75

on the Kenai refuge that has been in place for three decades."[112]  Plaintiffs respond by asserting that "NEPA procedures are required here . . . because the Kenai Rule reduces the effectiveness of State wildlife management by preempting BOG-authorized harvest opportunities and methods of take and restricting the use of firearms."[113]  Plaintiffs maintain this preemption of "State wildlife management will have a demonstrable impact on the physical environment," and thus, NEPA procedures apply.[114]

In *Kootenai Tribe of Idaho v. Veneman*, the Ninth Circuit considered whether NEPA applied to the Forest Service's adoption of a Roadless Rule on national forest lands.[115]  The Court recognized its prior decisions in which it had held that NEPA procedures did not apply when the agency action "maintain[ed] the environmental status quo."[116]  But the Court determined that "the reduction in human intervention that would result from the Roadless Rule actually does alter

---

[112] Docket 178 at 48.

[113] Docket 189 at 37–38.

[114] Docket 189 at 38.

[115] 313 F.3d at 1113–15.

[116] *Id.* at 1114 (citing *Burbank Anti–Noise Grp. v. Goldschmidt*, 623 F.2d 115, 116–17 (9th Cir.1981)) (NEPA does not apply when agency financed purchase of an airport that was already built).  *Accord Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343–44 (9th Cir. 1995) (NEPA does not apply when agency transferred title to wetlands already used for grazing); *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1448–49 (9th Cir. 1996) (closure of bicycle trails did not trigger need for an EIS).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 24 of 75

the environmental status quo" such that NEPA compliance was required.[117]  "By altering how the Forest Service manages inventoried roadless areas, the Roadless Rule will have a demonstrable impact on the physical environment."[118]

*California ex rel. Lockyer v. U.S. Department of Agriculture* involved the same Roadless Rule.[119]  The agency replaced the Roadless Rule with the State Petitions Rule, which allowed states a more active forest management role.  The agency maintained the State Petitions Rule was a procedural rule and fell within the categorical exclusion for "Rules . . . to establish . . . *administrative procedures*," such that no EIS was necessary.[120]  The State of California and several environmental organizations maintained that an EIS was required.  The District Court for the Northern District of California agreed, reasoning that the State Petitions Rule "substantively repealed the Roadless Rule . . . eliminated the uniform nationwide protections for roadless areas, . . . and reinstated the less protective, varied forest plans . . . ."[121]  Because "eliminating a major program

---

[117] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d at 1115.

[118] *Id.*

[119] 459 F. Supp. 2d 874 (N.D. Cal. 2006).

[120] *Id.* at 894 (emphasis in original).

[121] *Id.* at 898.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 25 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 25 of 75

triggers the obligation to perform environmental analysis," the categorical exclusion did not apply.[122]

In *California v. Bureau of Land Management*, the District Court for the Northern District of California considered whether NEPA applied to a decision by the Bureau of Land Management ("BLM") to repeal a rule regulating hydraulic fracking.[123] BLM had issued the final rule, but the rule had never gone into effect due to a preliminary injunction.[124] The plaintiffs maintained that because BLM had "previously reported environmental benefits" the rule would cause, "any action to rescind these benefits required a 'hard look' and an EIS, because it could significantly affect the environment."[125] BLM maintained "that it was not required to conduct a NEPA analysis because the Repeal rescinded a rule that had never gone into effect."[126] The district court agreed with BLM, reasoning that "[b]ecause enactment of the 2015 Rule was enjoined before it ever went into effect, its 'benefits' and 'protections' remained hypothetical and unrealized at the time the Repeal was promulgated," and therefore, "the environmental status quo never

---

[122] *Id.* (citing *Andrus v. Sierra Club*, 442 U.S. 347, 363 n.22 (1979)).

[123] Case No. 18-cv-00521-HSG, ___ F. Supp. 3d ___, 2020 WL 1492708 (N.D. Cal. Mar. 27, 2020).

[124] *Id.* at *1–2.

[125] *Id.* at *14.

[126] *Id.*

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 26 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 26 of 75

changed."[127]  The district court distinguished *Lockyer* on the ground that the Roadless Rule in *Lockyer* had been legally in effect for seven months before it was enjoined, whereas the fracking rule had never gone into effect.[128]

Similarly, in *National Wildlife Federation v. Espy* the agency took title to a ranch subject to a mortgage from a party who used it for grazing.[129]  The agency later quitclaimed title to the bank who owned the mortgage.  The bank in turn sold the ranch to a third party who also used the land for grazing.  Even though there was a change in ownership, the Ninth Circuit held the environmental status quo was unchanged because the activities on the land were the same.[130]

In the instant case, the Skilak WRA hunting restrictions and the brown bear baiting prohibition maintained the exact same effects on the human environment that had been in place for years.  Unlike the agency actions in *Kootenai Tribe* and *Lockyer*, the Skilak WRA hunting restrictions and the bear baiting rule did not result in a "reduction in human intervention that would . . . alter the environmental status quo" nor the "eliminat[ion of] a major program . . . ."  Rather, with respect to those two components of the Kenai Rule, this case is akin to both *California v. BLM* and

---

[127] *Id.* at *15.

[128] *Id.*

[129] *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337 (9th Cir. 1995).

[130] *Id.* at 1343–44.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 27 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 27 of 75

*National Wildlife Federation v. Espy* in that these aspects of the Kenai Rule had no effect on the human environment.

Plaintiffs' contention that preemption of State regulations "reduces the effectiveness of State wildlife management" and therefore, has "a demonstrable impact on the physical environment" is not supported by the case law.[131] As the cases discussed above demonstrate, in order for an action to affect the human environment, it must affect the environment on the ground. Plaintiffs have not pointed to any case that requires an EA or an EIS based solely on a change in who is enforcing the rules when the environmental status quo remains unchanged. For the foregoing reasons, NEPA does not apply to either the Skilak WRA restrictions or the brown bear baiting prohibition portions of the Kenai Rule.

However, the foregoing analysis does not apply to the portion of the Kenai Rule that restricts firearm discharges along the Kenai and Russian rivers, which was not previously in effect under either Federal or State law and is discussed below.

### b. Categorical Exclusions

Plaintiffs challenge the Service's reliance on categorical exclusions. Federal Defendants emphasize that during the comment period, Plaintiffs did not challenge

---

[131] Docket 189 at 37–38.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 28 of 75

the Service's determination that the Kenai Rule fell within a categorical exclusion.[132]

"Persons challenging an agency's compliance with NEPA 'must structure their participation so that it . . . alerts the agency to the [persons'] position and contentions,' in order to allow the agency to give the issue meaningful consideration."[133]  However, the Ninth Circuit "has declined to adopt 'a broad rule which would require participation in agency proceedings as a condition precedent to seeking judicial review of an agency decision.'"[134]  Instead, it "has drawn a distinction between situations in which NEPA plaintiffs submitted comments that did not alert the agency to their concerns or failed to participate when the agency looked into their concerns and situations in which plaintiffs allege procedural violations of NEPA."[135]  However, "the agency bears the primary responsibility to ensure that it complies with NEPA, and an EA's or an EIS' flaws might be so obvious that there is no need for a commentator to point them out specifically in

---

[132] Docket 178 at 49–50.

[133] *Dept. of Trans. v. Pub. Citizen*, 541 U.S. 752, 764 (2004) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978)) (holding that parties forfeited objection that EA failed to consider proposed alternatives by not identifying alternatives during EA's public comment period).

[134] *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1092 (9th Cir. 2006) (quoting *Kunaknana v. Clark*, 742 F.2d 1145, 1148 (9th Cir. 1984)).

[135] *Id.*

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 29 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 29 of 75

order to preserve its ability to challenge a proposed action."[136]   A flaw is "so obvious" that it does not result in waiver "where the agency had independent knowledge of the issues that concerned Plaintiffs."[137]

Federal Defendants contend that Plaintiffs waived their NEPA challenges by not raising them in their comments on the proposed Kenai Rule.[138]  They assert that neither Plaintiffs "nor any other commenter said anything about categorical exclusions or extraordinary circumstances in their comments on the proposed Kenai Rule."[139]  Because "Plaintiffs' NEPA arguments are new objections that were not presented in comments to the agency," Federal Defendants maintain that they "may not form a basis for reversal of an agency decision."[140]

Plaintiffs respond by asserting that their challenge to the Service's "improper reliance on categorical exclusions to avoid conducting any environmental analysis" is a "procedural claim," and thus, they "had no obligation to preserve their NEPA-based *procedural* claim in the rulemaking process via comments."[141]

---

[136] *Dept. of Trans. v. Pub. Citizen*, 541 U.S. at 765.

[137] *'Ilio'ulaokalani*, 464 F.3d at 1092 (citing *Friends of Clearwater v. Dombeck*, 222 F.3d 552, 558–59 (9th Cir. 2000)) (holding plaintiffs did not waive objection by failing to raise it to agency where "the record [was] replete with evidence that the Army recognized the specific shortfall of the PEIS raised by Plaintiffs")).

[138] Docket 178 at 49–50.

[139] Docket 178 at 50.

[140] Docket 178 at 51 (quoting *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991)).

[141] Docket 189 at 38 (emphasis in original) (citing *'Ilio'ulaokalani*, 464 F.3d at 1091–92).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 30 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 30 of 75

Determining whether a NEPA claim has been waived based on a failure to raise the issue before the agency is not a particularly clear inquiry. Much of the case law in this area involves allegations that an agency failed to consider a specific alternative action or failed to examine certain scientific considerations in an EA or an EIS; these objections are usually deemed waivable on appeal unless first raised to the agency.[142] On the other hand, the Ninth Circuit has cited *Northwest Environmental Defense Center v. Bonneville Power Administration*[143] as an example of a non-waivable claim, although it involved a different statute.[144] The plaintiffs in *Bonneville Power* alleged a "procedural violation of a statute that governs the public comment process."[145] The Ninth Circuit determined that in contrast to "a specific factual contention regarding the substantive content of an EIS," the agency had "a duty to comply with public participation processes provided

---

[142] *See, e.g.*, *Vt. Yankee Nuclear Power Corp.*, 465 U.S. 519, 553 (`978) (objections to EIS were not preserved where plaintiffs objected to the draft EIS and "the agency continually invited further clarification" but plaintiffs "declined to participate" in subsequent fact-finding related to their objections); *Public Citizen*, 541 U.S. at 764–65 (plaintiffs "forfeited any objection to the EA on the ground that it failed adequately to discuss potential alternatives" where they did not identify any such alternatives in their comments); *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991) (holding that where plaintiff did not raise claim that EIS impermissibly failed to consider effects on groundwater before agency, "such belatedly raised issues may not form a basis for reversal of an agency decision").

[143] 117 F.3d 1520 (9th Cir. 1997).

[144] *'Ilio'ulaokalani*, 464 F.3d at 1092 ("Although the *Bonneville Power* case dealt with the Northwest Power Act, that act is analogous to NEPA in that it 'governs the public comment process.'").

[145] *Bonneville Power*, 117 F.3d at 1535.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 31 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 31 of 75

for in the Northwest Power Act regardless of whether participants complain of violations."[146]

Plaintiffs cite to *United States v. Coalition for Buzzards Bay;* there, the First Circuit held that a challenge to an agency's application of a categorical exclusion to its decision to eliminate tugboat escorts following an oil spill was "functional" and hence not waived even though the issue had not been raised to the agency.[147] The First Circuit distinguished its case from *Public Citizen* where "the dispute was one about the substance of what evidence the agency should have considered" in its environmental analysis.[148]   In *Buzzards Bay*, the agency's reliance on a categorical exclusion "permitted it to avoid *any* environmental analysis."[149] Defendants argue *Buzzards Bay* is distinguishable because Plaintiffs' "NEPA claim is not 'so obvious' that they were relieved of their obligation to present it to the agency," whereas the NEPA claim in *Buzzards Bay* implicated a fear of environmental harm that was "not implausible."[150]   However, *Buzzards Bay* was not decided on the "so obvious" exception, but instead seems to suggest that the

---

[146] *Id.* (citing *Citizens for Clean Air v. EPA*, 959 F.2d 839, 846–47 (9th Cir. 1992)).

[147] 644 F.3d 26, 35 (1st Cir. 2011).

[148] *Id.*

[149] *Id.* (emphasis in original).

[150] Docket 201 at 32–33 (quoting *Buzzards Bay*, 644 F.3d at 36).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 32 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 32 of 75

First Circuit considers all objections to the use of categorical exclusions "functional" and thus non-waivable.

On the other hand, in *Alliance for The Wild Rockies v. Tidwell*, the District Court for the District of Montana held that the plaintiffs' objection to the agency's reliance on a categorical exclusion was waived when the plaintiffs failed to challenge the agency's "no extraordinary circumstances" determination at the agency level.[151] The plaintiffs asserted that the agency's no extraordinary circumstances finding was marred by an inadequate soil analysis of the watershed at issue; they had not raised their concern during the NEPA comment period.[152] The district court determined that the plaintiffs "'had some obligation to raise these issues during the comment process,'" and "allowing the plaintiff[s] to raise the issue on appeal places the agency at an unfair disadvantage."[153]

The Court need not resolve the waiver issue here because even if Plaintiffs' objection to the categorical exclusion should have been raised at the agency level, "the agency bears the primary responsibility to ensure that it complies with NEPA," and the Service's failure to "adequately explain its decision" is "so obvious that there is no need for a commentator to point [it] out specifically in order to preserve

---

[151] 623 F. Supp. 2d 1198, 1206 (D. Mont. 2009) (quoting *Havasupai*, 943 F.2d at 34).

[152] *Id.* at 1205.

[153] *Id.* at 1206 (quoting *Havasupai*, 943 F.2d at 34).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 33 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 33 of 75

its ability to challenge" it.[154]  The Ninth Circuit has been clear that an "agency cannot avoid its statutory responsibilities under NEPA merely by asserting that an activity it wishes to pursue will have an insignificant effect on the environment" such that the Service should have independent knowledge of this requirement.[155] Rather than explain how the restriction on firearm discharges along the rivers is "technical and procedural in nature," why the "environmental effects are too broad, speculative, or conjectural to lend themselves to meaningful analysis," or how it "maintain[s] essentially the permitted level of use,"[156] the Service merely "restated the exclusion[s]" and "did not give sufficient reasons for its decision."[157]  Reciting the text of a categorical exclusion without elaboration or explanation does not constitute the required "convincing statement of reasons" and does not allow the Court to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[158]

### c. Extraordinary Circumstances

---

[154] *'Ilio'ulaukalani*, 464 F.3d at 1092.  *See also Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1134–35 (9th Cir. 2011) (holding that agencies' failure to discuss environmental impact of proposed action "is a flaw 'so obvious' that there was no need for petitioners to point it out specifically in order to preserve their ability to challenge the EA on this ground").

[155] *Alaska Ctr. for the Env't.*, 189 F.3d at 859.

[156] 81 Fed. Reg. 27043, FWL013575.

[157] *Alaska Ctr. for the Env't*, 189 F.3d at 859.

[158] *Id.* (internal quotations omitted).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 34 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 34 of 75

The Service also "did not discuss whether an exception to the categorical exclusion[s]" based on extraordinary circumstances applied to the firearm discharge restriction.[159] Plaintiffs point to the agency's regulation that identifies as an extraordinary circumstance "individual actions . . . that [h]ave highly controversial environmental effects or involve unresolved conflicts concerning alternative uses of available resources" and maintain that the Kenai Rule may meet this criteria.[160] The Service itself recognized the possibility of public controversy in its outreach plan for the proposed rule, stating there that the Kenai Rule was "expected to be moderately controversial as the State of Alaska and some affected user groups will likely oppose some aspects of the rule."[161] Federal Defendants point to this statement as evidence that the Service considered the possibility of public controversy and so any failure to document its analysis in the Kenai Rule is harmless.[162] But the Kenai Rule itself does not contain the words "public

---

[159] *Jones v. Gordon*, 792 F.2d 821, 828 (9th Cir. 1986) (holding that agency unreasonably determined not to prepare EIS where it "failed to explain adequately its decision not to prepare an environmental impact statement" and failed to discuss whether an exception applied).

[160] Docket 190 at 45 (quoting 43 C.F.R. § 46.215(c)).

[161] FWL004690. Federal Defendants also point to an e-mail which notes the "quiet roll-out" of the proposed rule. *See* FWL008749 (copy of e-mail). It is not at all clear that the e-mail is referring to public controversy regarding the substance of the rule as opposed to a lack of surprise at the proposal because it explains that it explains that the quietness is assumed to be due to "the thorough outreach Refuges did to inform all interested parties." In any event, that the Service received numerous comments from various parties contradicts the implication that the proposal did not draw much controversy.

[162] Docket 178 at 53 (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) ("We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonable be discerned.") (internal quotation omitted)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 35 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 35 of 75

controversy" or "extraordinary circumstances." Such an omission violates the Service's statutory duty to adequately explain its decision and is not harmless because it is not apparent from the single statement in the outreach plan that the Service conducted a thorough analysis of the issue.

Federal Defendants also assert that any error in the Service's NEPA procedures is harmless because the record shows on its face that no public controversy exists. They contend that at most the comments show general opposition to the firearm discharge restrictions, but that "[c]ontroversy does not refer to the existence of opposition to a use" and instead is evidenced by a "substantial dispute . . . as to [its] size, nature, or effect."[163] However, comments received by the Service raised questions about how the rule would affect hunting opportunities and pointed out that the "river corridor firearm restriction[]" was "not previously evaluated in the CCP."[164] These comments are sufficient to raise the possibility of public controversy. "When an agency decides to proceed with an action in the absence of an EA or EIS, the agency must adequately explain its decision."[165] Here, the Kenai Rule is silent on whether extraordinary circumstances apply.

---

[163] Docket 178 at 54 (quoting *Bonneville Power*, 117 F.3d at 1536).

[164] FWL008986.

[165] *Alaska Ctr. for the Envt.*, 189 F.3d at 859 (quoting *Jones v. Gordon*, 792 F.2d 821, 828 (9th Cir. 1986)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 36 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 36 of 75

For the foregoing reasons, remand to the agency is warranted with respect to the Kenai and Russian rivers firearms restriction so that the agency may "provide a reasoned explanation for its reliance on the categorical exclusion[s], including an explanation of why the exceptions do not apply" or provide a reasoned explanation of whatever course it elects to pursue.[166]

## II. Alaska National Interest Lands Conservation Act

The parties dispute the correct interpretation and interplay between several sections of ANILCA. Section 304(a) requires that "[e]ach refuge shall be administered by the Secretary of the Interior, subject to valid existing rights, in accordance with the laws governing the administration of units of the National Wildlife Refuge System, and this Act." Section 304(g)(1) instructs the Secretary to prepare CCPs for each national wildlife refuge. These plans "shall . . . designate areas within the refuge according to their respective resources" and "specify the uses within each such area which may be compatible with the major purposes of the refuge."[167] Section 1314(a) states that "[n]othing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in

---

[166] *California v. Norton*, 311 F.3d 1162, 1178 (9th Cir. 2002); *see also Jones*, 792 F.2d at 829 ("We emphasize, however, that we disagree with the district court's conclusion that the Service must prepare [an EIS] . . . Rather, the Service must consider the requirements of NEPA and regulations thereunder, and must provide a reasoned explanation of whatever course it elects to pursue.").

[167] Pub. L. No. 96-487 § 304(g)(3)(A)(i), (iii).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 37 of 75

title VIII of this Act."[168]  Section 1314(b) states that "[e]xcept as specifically provided otherwise by this Act, nothing in this Act is intended to enlarge or diminish the authority of the Secretary over the management of the public lands."[169]  Section 1314(c) prescribes that "[t]he taking of fish and wildlife in all conservation system units . . . shall be carried out in accordance with the provisions of this Act and other applicable State and Federal law."[170]

Plaintiffs assert that under § 1314(a), "the State has authority for management of fish and wildlife, including methods and means of hunting."[171]  Thus, Plaintiffs maintain that "[t]he Kenai Rule violates ANILCA because the [Service] tried to take over the State's role in managing wildlife on public lands in Alaska."[172]  They urge that neither § 304(a) or § 304(g) override "the division of authority in § 1314."[173]  Plaintiffs additionally contend that the Service

---

[168] 16 U.S.C. § 3202(a).

[169] 16 U.S.C. § 3202(b).

[170] 16 U.S.C. § 3202(c).

[171] Docket 189 at 49.  In their opening brief, Plaintiffs also assert that the saving clause at § 815, 16 U.S.C. § 3202(a), prohibits the Service from regulating hunting for any reason other than conservation.  Docket 171 at 47–49.  Section 815 provides that "[n]othing in this title shall be construed as . . . authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands . . . unless necessary for the conservation of healthy populations of fish and wildlife."  However, "this title" refers to Title VIII which governs subsistence uses, whereas CCPs are governed by Title III, and thus, § 815 does not apply here.  At oral argument, Plaintiffs agreed § 815 "is not applicable here."  Docket 218.

[172] Docket 171 at 47.

[173] Docket 189 at 50.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 38 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 38 of 75

"misconstrued the Kenai NWR's purposes to justify the prohibition of hunting on the Skilak WRA and along the Kenai and Russian rivers," which created "a false conflict between environmental education, hunting, and other wildlife-dependent uses where no actual conflict exists." [174]

Federal Defendants respond that the Kenai Rule is in accordance with ANILCA. Citing § 304(g), they assert that "Title III of ANILCA authorizes the Secretary to accommodate incompatible refuge purposes by specifying different areas of a refuge for different purposes." [175] Rather than giving the State plenary authority over wildlife management on federal lands, "ANILCA maintains the balance of authority whereby the Service only permits State management of wildlife to the extent it does not conflict with federal management priorities." [176] Intervenor-Defendants add that rather than "granting the State plenary authority over wildlife on federal lands," § 1314 merely "reflect[s] Congress's intent for 'ordinary principles of conflict preemption to apply.'" [177]

The Supremacy Clause establishes that "the Law of the United States . . . shall be the supreme Law of the Land . . . ." [178] The parties do not dispute that

_____

[174] Docket 189 at 53.

[175] Docket 178 at 33.

[176] Docket 202 at 8.

[177] Docket 185 at 19–20 (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 854 (9th Cir. 2002)).

[178] U.S. Const. art. VI, cl. 2.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 39 of 75

Case 3:17-cv-00013-SLG    Document 219    Filed 11/13/20    Page 39 of 75

Congress may, if it chooses, preempt State law regarding the regulation of fish and wildlife within the Kenai NWR.[179]  Instead, the question is to what extent Congress in enacting ANILCA intended to preempt the State's wildlife management jurisdiction over federal lands.

"Congress may expressly preempt state law by enacting a clear statement to that effect."[180]  However, "Congress may also preempt state law implicitly."[181] The task of determining whether Congress intended to preempt state law in the absence of an expressly stated intent to do so is "guided by two cornerstones of . . . pre-emption jurisprudence."[182]  "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'"[183]  "Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the

---

[179] The Property Clause of the Constitution empowers Congress "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.  "[T]he 'complete power' that Congress has over public lands necessarily includes the power to regulate and protect the wildlife living there."  *Kleppe v. New Mexico*, 426 U.S. 529, 540–41 (1976).

[180] *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litigation*, 959 F.3d 1201, 1211 (9th Cir. 2020) (citing *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020)).

[181] *Id.*

[182] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

[183] *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 40 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 40 of 75

historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"[184]

The Supreme Court has identified two circumstances in which "Congress's implicit intent to preempt state law clears that high threshold."[185] The first circumstance occurs "when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation . . . ."[186] The second circumstance occurs "when a state law actually conflicts with federal law, either because compliance with both state and federal law is impossible, or because the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . ."[187] While "a saving clause raises the inference that Congress did not intend to preempt state law," a court "may not interpret a saving clause as preserving a state law that would so conflict and interfere with a federal enactment that it would defeat the federal law's purpose or essentially nullify it . . . ."[188]

---

[184] *Id.* (quoting *Lohr*, 518 U.S. at 485) (alternations in original).

[185] *In re Volkswagen*, 959 F.3d at 1212.

[186] *Id.* (quoting *Murphy v. Nat'l; Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018)) (internal quotations omitted).

[187] *Id.* (internal quotations and citations omitted).

[188] *Id.* at 1213–14.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 41 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 41 of 75

In *National Audubon Society v. Davis*,[189] the Ninth Circuit considered a saving clause in the National Wildlife Refuge System Improvement Act similar to § 1314 of ANILCA, which reads:

> Nothing in this Act shall be construed as affecting the authority, jurisdiction, or responsibility of the several States to manage, control, or regulate fish and resident wildlife under State law or regulations in any area within the System. Regulations permitting hunting or fishing of fish and resident wildlife within the System shall be, to the extent practicable, consistent with State fish and wildlife laws, regulations, and management plans.[190]

The plaintiffs challenged a leg-trap ban adopted by California voters. The district court held that the leg-trap ban was preempted by the Improvement Act insofar as the trapping occurred on national wildlife refuges ("NWR"). On appeal, the State of California urged reversal, citing the first sentence of the saving clause. But the Ninth Circuit affirmed, holding that the first sentence of the saving clause "was not meant to eviscerate the primacy of federal authority over NWR management."[191] Accordingly, the Court held that the Improvement Act preempts California's "regulation of federal trapping on NWRs in California because the ban on leghold traps conflicts with [the Service's] statutory management authority on those federal

---

[189] 307 F.3d 835 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

[190] 16 U.S.C. § 668dd(m).

[191] *Audubon Soc'y*, 307 F.3d at 854.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 42 of 75

reserves."[192]  The Ninth Circuit noted its agreement with the Tenth Circuit's opinion in *Wyoming v. United States*, which offers a more extended analysis of the Improvement Act provision.[193]

In *Wyoming*, the State of Wyoming challenged the Service's refusal to allow the State to vaccinate elk on the National Elk Range ("NER").[194]  Citing to the first sentence of the Improvement Act's saving clause, the State argued that the Improvement Act "reserves to the State the unencumbered right to manage wildlife" on the NER."[195]  The Tenth Circuit began with the "assumption . . . that the [Improvement Act] was not meant to supercede the State of Wyoming's historical police powers to manage wildlife on federal lands within its borders 'unless that was the clear and manifest purpose of Congress.'"[196]  Nonetheless, while "[t]he first sentence of the [Improvement Act's] saving clause, viewed in isolation, seems to support our assumption that . . . the State retains the absolute right to manage wildlife on the [National Elk Range]," the court determined that "[s]uch an interpretation of the saving clause . . . simply is not feasible in light of established rules of construction requiring us to consider the [Improvement Act] in its entirety,

_____

[192] *Id.*

[193] 279 F.3d 1214, 1230–35 (10th Cir. 2002).

[194] *Id.* at 1221–22.

[195] *Id.* at 1227–28.

[196] *Id.* at 1231 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 43 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 43 of 75

mindful of congressional purposes and objectives."[197]  Although the Improvement Act calls for "state involvement and participation of the management of the [National Wildlife Refuge System]," the Improvement Act requires the Service "to act in conformity with State objectives only 'to the extent practicable.'"[198]  The Tenth Circuit also observed that the legislative history behind the saving clause "lends little support to [Wyoming's] claim that the saving clause unconditionally reserves to it the 'sovereign' right to manage elk" on the NER."  The court cited to a statement in the legislative history that noted the Improvement Act was "designed to maintain the status quo relative to the dispute between the States and the [DOI] over the issue of which entity has the authority to control, manage, and regulate fish and resident wildlife on areas within the System."[199]  The Tenth Circuit explained that "the proposition that the [Service] lacks the power to make a decision regarding the health of wildlife on the NER when a State, for whatever reason, disagrees with that decision proves too much" because "[s]uch a construction of the saving clause would be inconsistent with the [Improvement Act's] 'mission . . . to administer a national network of lands.'"[200]  Instead, the Tenth Circuit determined that the saving clause reflected only that "Congress did not

---

[197] *Id.* at 1231.

[198] *Id.* at 1232 (quoting 16 U.S.C. § 668dd(e)(1)(A)(iii) and citing § 668dd(e)(3)).

[199] *Id.* at 1232–33 (quoting S. Rep. No. 1463, at 6–7, reprinted in 1966 U.S.C.C.A.N. at 3347–48).

[200] *Id.* at 1233–34 (quoting 16 U.S.C. § 668dd(a)(2)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 44 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 44 of 75

intend to displace entirely state regulation and management of wildlife on federal public lands," and instead "intended ordinary principles of conflict preemption to apply . . . ."[201]

Similar logic applies to § 1314 of ANILCA. Like the Improvement Act, ANILCA does not unconditionally direct the Secretary to conform federal regulations to state law, but instead provides that "[e]ach refuge shall be administered . . . in accordance with the laws governing the administration of units of the National Wildlife Refuge System, and this Act."[202] ANILCA instructs the Secretary to prepare CCPs that "specify the uses within each such area which may be compatible with the major purposes of the refuge," without mention of conformity to state law.[203] While ANILCA aims to strike a "balance between the reservation of national conservation system units and those public lands necessary and appropriate for more intensive use and disposition," Plaintiffs do not point to any provision in ANILCA that explicitly states that federal regulations governing NWRs must conform to state law.[204] Instead, they point to § 1314(a), which by itself seems to support the proposition that the State retains ultimate control over wildlife on federal lands; however, this construction of § 1314 would be contrary to

---

[201] *Id.* at 1234.

[202] Pub. L. No. 96-487 § 304(a).

[203] Pub. L. No. 96-487 § 304(g)(3)(A)(iii).

[204] *Accord* Pub. L. No. 96-487 § 101(d); 16 U.S.C. § 3101(d).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 45 of 75

Case 3:17-cv-00013-SLG    Document 219    Filed 11/13/20    Page 45 of 75

ANILCA's purpose to "provide for the maintenance of sound populations of, and habitat for, wildlife species of inestimable value to the citizens of Alaska *and the Nation* . . . ."[205]   Section 1314 itself is at odds with Plaintiffs' reading because it provides that "[t]he taking of fish and wildlife in all conservation system units . . . shall be carried out in accordance with the provisions of this Act and other applicable State *and Federal law.*"[206]   Thus, § 1314 specifically contemplates that federal law will apply to NWRs, and where there is a clear conflict between federal and state law, the federal law controls.

Additionally, the legislative record does not support the State's sweeping interpretation of § 1314(a).  Instead, the record explains that § 1314 "is a perfecting amendment designed to maintain the status quo in historic Federal-State relations concerning fish and wildlife management, except as specifically modified by this Act in the Subsistence Title."[207]   This statement closely resembles the statement the *Wyoming* court cited as evidence that Congress did not intend the Improvement Act to confer plenary authority over wildlife on federal lands to the States.[208]

---

[205] Pub. L. No. 96-487  § 101(b); 16 U.S.C. § 3101(b) (emphasis added).

[206] Pub. L. No. 96-487  § 1314(c); 16 U.S.C. § 3202(c) (emphasis added).

[207] 126 Cong. Rec. 31109 (statement of Sen. Ted Stevens).

[208] *See Wyoming*, 279 F.3d at 1232–33 (quoting S. Rep. No. 1463, at 6-7, reprinted in 1966 U.S.C.C.A.N. at 3347–48) ("Your committee has added a provision to this subsection which makes it clear that this bill does not diminish or increase the authority, jurisdiction, or responsibility of the States relative to fish and resident wildlife in any area within the system.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 46 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 46 of 75

This interpretation of ANILCA is further supported by the 1982 MMU between the State and the Service, which "reflects the general policy guidelines within which the two agencies agree to operate.".[209]  In the MMU, the Service agreed "[t]o adopt refuge management plans whose provisions . . . are in substantial agreement with the [State's] fish and wildlife plans, *unless such plans are determined formally to be incompatible with the purposes for which the respective refuges were established.*"[210]  The Service and the State mutually agreed that "the taking of fish and wildlife . . . on Service lands in Alaska is authorized in accordance with applicable State and Federal law unless State regulations are found to be incompatible with documented Refuge goals, objectives, or management plans."[211]  Thus, both the State and the Service recognized and agreed in the MMU that the Service retained ultimate authority to manage NWRs in accordance with the purposes set forth in ANILCA.

Accordingly, the Court declines to "give broad effect to [a] saving clause[] where doing so would upset the careful regulatory scheme established by federal

---

The amendment was agreed to by the President of the International Association of Game, Fish, and Conservation Commissioners representing all the State fish and game departments and by the Department of the Interior.  It is designed to maintain the status quo relative to the dispute between the States and the Department over the issue of which entity has the authority to control, manage, and regulate fish and resident wildlife on areas within the System.").

[209] FWL001551.

[210] FWL001553 (emphasis added).

[211] FWL001553–54.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 47 of 75

law."[212]  Rather, the Court finds that § 1314(a) "was not meant to eviscerate the primacy of federal authority over [national wildlife refuge] management"[213] and instead reflects Congress's intent that "ordinary principles of conflict preemption apply" to disputes involving ANILCA.[214]

Plaintiffs' assertion that the Service has misconstrued the purposes of the Kenai NWR to prioritize other uses over hunting is also unavailing.  Notably, § 303(4)(B) provides that "opportunities for scientific research, interpretation, environmental education, and land management training" within the Kenai NWR are to be provided "in a manner consistent" with "conserve[ing] fish and wildlife populations and habitats in their natural diversity" and "fulfill[ing] the international treaty obligations of the United States with respect to fish and wildlife."[215]  In contrast, "opportunities for fish and wildlife-oriented recreation" such as hunting are to be provided "in a manner compatible with these purposes," referring to all the other listed purposes of the Kenai NWR.[216]  Beginning with the first CCP, the Service determined that hunting should be restricted in the Skilak WRA "so wildlife

---

[212] *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 870 (2000) (internal quotation omitted) (holding that saving clause for tort liability in federal motor vehicle safety statute that also contains express preemption clause "does not foreclose . . . the possibility that a federal safety standard will preempt a state common-law tort action with which it conflicts").

[213] *Nat'l Audubon Society*, 307 F.3d at 854.

[214] *Wyoming*, 279 F.3d at 1234.

[215] Pub. L. No. 96-487 § 303(4)(B)(i)–(iv).

[216] Pub. L. No. 96-487  § 303(4)(B)(v).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 48 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 48 of 75

would become more abundant, less wary, and easily viewed."[217]  Even if "Congress did not require [environmental education and scientific research to] be carried out to the exclusion of hunting" as urged by Plaintiffs,[218] § 304(g) specifically instructs the Secretary to "specify the uses within each such area which may be compatible with the major purposes of the refuge."[219]  The prohibition on brown bear baiting and the restrictions on hunting in the Skilak WRA and along the Kenai and Russian rivers are valid exercises of the Service's authority under ANILCA to specify different uses for different areas within the Kenai NWR.

For the foregoing reasons, the Court finds that the challenged aspects of the Kenai Rule do not violate ANILCA.

### III. National Wildlife Refuge System Improvement Act

Plaintiffs assert that the Kenai Rule violates the Improvement Act because it impermissibly "elevates one compatible priority use (viewing) over another (hunting)."[220]  They contend that the Service's reliance on the Skilak WRA's "antiquated management goal" is inappropriate because "the Skilak WRA's establishment in 1985 preceded the Improvement Act's instruction in 1997 to

---

[217] FWL000982.

[218] Docket 189 at 53.

[219] Pub. L. No. 96-487 § 304(g)(1)(A)(iii).

[220] Docket 171 at 50.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 49 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 49 of 75

'facilitate' compatible wildlife-dependent recreational uses."[221]     Plaintiffs additionally assert that "the Kenai Rule violates the Improvement Act and [Service] policy by promoting non-priority uses over hunting," such as "hiking, night sky observation, cross country skiing, and winter camping . . . in the Skilak WRA" and river floating and hiking on and along the Kenai and Russian rivers.[222]  They also contend that the Service "has not made a formal finding of incompatibility" and in fact concluded in the 2007 compatibility determination that "hunting is compatible," and thus the Service "has no legal basis to exclude hunting for the benefit of other uses."[223]     Plaintiffs also assert that the Service misconstrued the BOG's regulations regarding brown bear baiting and predator hunts in the Skilak WRA as "intensive management" and erroneously concluded they were inconsistent with the 2010 Kenai NWR CCP, which "unnecessarily creat[ed] a conflict with State law."[224]  Thus, the Plaintiffs maintain that the Kenai Rule "is not consistent with State wildlife laws, 'to the extent practicable,'"[225] and "illegally deprive[s] the State of its authority" under § 668dd(m).[226]

---

[221] Docket 171 at 51.

[222] Docket 171 at 52 (citing 81 Fed. Reg. 27034, 27038).

[223] Docket 190 at 55.

[224] Docket 189 at 56–57.

[225] Docket 189 at 57 (quoting 16 U.S.C. § 668dd(m)).

[226] Docket 189 at 56 n.25.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 50 of 75

Case 3:17-cv-00013-SLG    Document 219    Filed 11/13/20    Page 50 of 75

Federal Defendants respond by first asserting that "the Service did not elevate one priority use over another," but instead "specified different areas of the refuge for different purposes that can be incompatible" which is "authorized by section 304(g) of ANILCA."[227]  Regarding the Skilak WRA hunting restrictions, they contend that although the Skilak WRA was created and developed pursuant to ANILCA prior to the passage of the Improvement Act, "any conflict between the Improvement Act and ANILCA is resolved in favor of ANILCA," pointing to § 9(b) of the Improvement Act, which provides that "any conflict arises between any provision of this Act and any provision of the Alaska National Interest Lands Conservation Act, then the provision in the Alaska National Interest Lands Conservation Act shall prevail."[228]  Federal Defendants additionally assert that the Skilak WRA hunting restrictions do not "elevate[] non-priority uses . . . over hunting"; instead, pursuant to "section 6 of the Improvement Act, the Service considered whether a 'new use' of the Kenai Refuge (open hunting in the Skilak WRA) was 'inconsistent with public safety.'"[229]  Likewise, regarding the prohibition

---

[227] Docket 178 at 35–36.

[228] Pub. L. No. 105-57 § 9(b), 111 Stat. 1252 (1997) (statutory construction note regarding 16 U.S.C. § 668dd with respect to Alaska).

[229] *See* 16 U.S.C. § 668dd(d)(3)(A)(i) ("Except as provided in clause (iv), the Secretary shall not initiate or permit a new use of a refuge or expand, renew, or extend an existing use of a refuge, unless the Secretary has determined that the use is a compatible use and that the use is not inconsistent with public safety. The Secretary may make the determinations referred to in this paragraph for a refuge concurrently with development of a conservation plan under subsection (e).").  *See also* 16 U.S.C. § 668dd(d)(3)(A)(iii) ("Wildlife-dependent recreational uses may be authorized on a refuge when they are compatible and not inconsistent with public safety.").

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 51 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 51 of 75

on discharging firearms along the Kenai and Russian rivers, they contend that "[w]hile the Service . . . considered general river recreation to document levels of river usage, its public safety concerns are justified under ANILCA and the Improvement Act."[230]  In response to Plaintiffs' assertion that they misconstrued the BOG's regulations as "intensive management," Federal Defendants respond that it "is irrelevant to the Kenai Rule because . . . the Kenai Rule does not rely on notions of 'intensive management' or 'predator control'"; rather, "the Court need only consider whether the 'agency's stated reasons for' the Kenai Rule are sufficient . . . ."[231]

Plaintiffs' contention that the Service has impermissibly elevated one priority use over another priority use by restricting predator hunting in the Skilak WRA and prohibiting firearm discharges along the Kenai and Russian rivers is without merit. ANILCA instructs the Secretary to develop CCPs that "specify the uses within each such area which may be compatible with the major purposes of the refuge."[232] Even if the Skilak restrictions constitute impermissible prioritization of wildlife viewing and photography or fishing over hunting under the Improvement Act, ANILCA's § 304(g) instructs the Service to set aside different areas for different uses; if the Improvement Act conflicts with the this provision in ANILCA, § 304(g)

---

[230] Docket 178 at 40.

[231] Docket 201 at 29 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019)).

[232] Pub. L. No. 96-487 § 304(g)(1)(A)(iii).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 52 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 52 of 75

prevails.[233]  For similar reasons, Plaintiffs' contention that the Service has "no legal basis to exclude hunting for the benefit of other uses" because the "2007 [compatibility determination] concludes that hunting is compatible" also fails.[234] Even though hunting has been determined to be compatible, ANILCA still instructs the Secretary to set aside different portions of the Kenai NWR for different uses,[235] and ANILCA controls if in conflict with the Improvement Act on this point.[236]

Plaintiffs' assertion that the Kenai Rule impermissibly elevates non-priority uses over hunting is also unpersuasive.  The Improvement Act permits restrictions on compatible uses that are "necessary, reasonable, and appropriate." [237]   The Service explained that the restriction on firearm discharges along the Kenai and Russian rivers was included "to reduce threats to public safety" in the area.[238]  The

---

[233] Pub. L. No. 105-57 § 9(b), 111 Stat. 1252 (1997) (statutory construction note regarding 16 U.S.C. § 668dd with respect to Alaska).

[234] Docket 190 at 55.

[235] Pub. L. No. 96-487 § 304(g)(1)(A).

[236] Pub. L. No. 105-57 § 9(b), 111 Stat. 1252 (1997) (statutory construction note regarding 16 U.S.C. § 668dd with respect to Alaska).

[237] 16 U.S.C. § 668dd(a)(3)(D).  This provision only applies "when the Secretary determines that a proposed wildlife-dependent recreational use is a compatible use within a refuge . . . ."  *Id.* The Secretary has not determined that brown bear baiting is a compatible use within the Kenai NWR.  Thus, this provision does not apply to the bear baiting restriction.

[238] 81 Fed. Reg. 27034 ("Recent takes of brown bears along the Russian and Kenai rivers during the falls of 2013 and 2014 posed threats to public safety, as bears were shot in close proximity to other users fishing from shore, wading, or boating, and firearms and ammunition with substantial lethal distances were used in areas where sight distances are extremely limited due to vegetation and river meanders.  These takes occurred on, along, or immediately adjacent to river shorelines and within the 11-mile buffer distance established by this rule.  In addition, discharge of firearms to 'warn' or deter bears presents a growing threat to public safety along

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 53 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 53 of 75

Service also explained that the Skilak WRA was heavily used such that expanded hunting activity in that area could pose public safety issues.[239]  These restrictions reasonably and appropriately further public safety in the Kenai NWR given the Improvement Act's prohibition on uses which are "inconsistent with public safety."[240]

Additionally, the Court agrees with Federal Defendants that it is unnecessary to reach the question of whether the Service created an unnecessary conflict with State law by misconstruing the BOG's regulations as "intensive management." The Kenai Rule provides detailed explanations and findings supporting its provisions, none of which references or relates to "intensive management."[241]

---

the Russian and Kenai rivers.  Recently enacted changes to State hunting regulations for brown bears on the Kenai Peninsula have increased the potential for firearms discharge to result in threats to public safety in these areas.  Current brown bear hunting season dates of September 1 to May 31 substantially overlap with periods of high public use along the Russian and Kenai rivers during fall and spring (in the 7 years prior to 2008, brown bear hunting season dates were October 15 to October 30).  The Service considers adoption of this rule necessary to reduce threats to public safety posed by discharge of firearms along the Russian and Kenai rivers during periods of high visitation for activities including fishing, river floating, hiking, and wildlife observation.").

[239] 81 Fed. Reg. 27038; FWL013570 ("While highest levels of public use in the Skilak WRA occur in the summer months, observations by Refuge staff and records of use of Refuge public use cabins indicate that fall and winter recreational use of the area for many activities, including hiking, general nature observation and photography, night sky  observation, cross country skiing, and winter camping, is substantial and increasing. Given this increased public use during winter, the Service believes that allowing hunting (or trapping) of wolves, coyotes, and lynx during winter months in the Skilak WRA would increase the potential for conflicts between users and safety issues.").

[240] 16 U.S.C. § 668dd(d)(3)(A)(i).  This same analysis also applies to the Court's determination that the restrictions are not arbitrary or capricious pursuant to the Administrative Procedure Act, as explained below.

[241] *See* 81 Fed. Reg. 27030–48.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 54 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 54 of 75

Furthermore, while the Improvement Act instructs the Service to adopt regulations that are, "to the extent practicable, consistent with State fish and wildlife laws, regulations and management plans,"[242] the Ninth Circuit has held that the Improvement Act gives the Service ultimate authority to preempt State regulations and is not bound by State law that conflicts with its management directives.[243]

Accordingly, the Court finds that the challenged aspects of the Kenai Rule do not violate the Improvement Act.

## IV. Administrative Procedure Act

Plaintiffs urge that the challenged aspects of the Kenai Rule are not "fully informed and well-considered" and therefore, they should be set aside as arbitrary and capricious pursuant to the Administrative Procedure Act.[244]

### a. Skilak Wildlife Recreation Area Hunting Restrictions

Plaintiffs maintain that the Service's conclusion that allowing late-season predator hunts in the Skilak WRA would negatively impact wildlife viewing and photography "is unsupported by any evidence in the administrative record" because the Service "lacked information about predator populations in the Skilak WRA"[245] and because "wild animals do not understand or comply with

---

[242] 16 U.S.C. § 668dd(m).

[243] *Audubon Soc'y v. Davis*, 307 F.3d at 854.

[244] Docket 171 at 19–20 (citing *Sierra Club v. Bosworth*, 510 F.3d 1016, 1023 (9th Cir. 2007)).

[245] Docket 171 at 22.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 55 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 55 of 75

jurisdictional boundaries."[246]  Plaintiffs also allege that the record does not support the Service's assumptions about how Skilak WRA visitors experience and learn about predator species and how late-season predator hunts "would degrade these experiences."[247]  Additionally, they contend that the Kenai Rule does not "justify closing the Skilak WRA to wolf, coyote, and lynx hunting as a means to prevent conflict between users"[248] because it "does not point to any evidence of actual conflicts between wildlife viewing and hunting."[249]

Federal Defendants maintain that the Service's analysis provides a "reasonable basis" to conclude that "annual harvest [in the Skilak WRA] would maintain reduced densities and/or affect behavior" even though "there were no 'area-specific studies and data . . . .'"[250]  They assert that Plaintiffs "identify no available science or data that the Service overlooked" and that Plaintiffs instead claim that the Service should have looked at alternatives that were not "proposed in comments during the rulemaking process."[251]  Intervenor-Defendants add that

---

[246] Docket 189 at 14–15.

[247] Docket 171 at 22–23.

[248] Docket 171 at 24.

[249] Docket 189 at 17.  Plaintiffs also urge that the Service ignored "that hunting is a priority use by law" and "that the BOG and citizens requested predator hunting opportunities in the off season" in the Skilak WRA.  Docket 171 at 23.  As explained above, the Service has discretion under the Improvement Act and ANILCA to implement reasonable regulations to prevent conflicts between uses and to set aside different portions of the Kenai NWR for different uses.

[250] Docket 178 at 30.

[251] Docket 178 at 30–31.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 56 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 56 of 75

it was reasonable for the Service to conclude that keeping "the Skilak WRA closed to predator hunting would avoid user conflicts and safety concerns given the intense recreational use the area receives," citing the 2007 Skilak WRA management plan, which noted that the "single most common opinion expressed among the responses was support for retaining existing firearm restrictions."[252]

The Service provided a reasonable justification to continue the Skilak WRA hunting restrictions based on a rational connection to facts in the record after considering the relevant factors.[253] The Service explained that its conclusion was based on "the area's small size, its accessibility by road, proximity to population centers, and likely hunting (or trapping) pressure."[254] This justification is rationally connected to the choice to restrict hunting in the area. Accessibility by road and proximity to population centers are among the very reasons "the BOG and citizens requested predator hunting opportunities" in the Skilak WRA, which supports the inference that opening the Skilak WRA to more hunting would result in significant additional pressure on local wildlife populations.[255] In restricting hunting and

---

[252] Docket 185 at 26.

[253] *Cf. Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (citing *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agriculture*, 415 F.3d 1078, 1093 (9th Cir. 2005)) (finding agency decision to categorically exclude prisoners convicted of firearm-related offenses from early release arbitrary and capricious because agency relied on one rationale absent from the administrative record and did not provide explanation for its other rationale).

[254] 81 Fed. Reg. 27038; FWL013570.

[255] Docket 171 at 23; FWL008985 ("The accessibility of the SWRA is a draw for all users and this closure unnecessarily limits already limited road-accessible opportunities on the Refuge.").

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 57 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 57 of 75

trapping so that "wildlife would become more abundant, less wary, and more easily observed,"[256] the Service made a prediction within its area of expertise, to which the Court accords substantial deference.[257] While Plaintiffs provide several plausible counterarguments to the Service's conclusion, the Court will not substitute its own judgment for the judgment of the Service on this determination.[258]

Plaintiffs cite several cases for the proposition that "[d]istrict courts have repeatedly rejected an agency's attempts to rely on assumption as the basis for action," but each is distinguishable from this case.[259] In *Center for Biodiversity v. Bureau of Land Management*, the District Court for the Northern District of California reviewed a critical habitat rule issued by the Service.[260] The plaintiffs maintained that the final economic analysis on which the rule relied was deficient because it contained a flawed assumption that an interim closure of the area

---

[256] 81 Fed. Reg. 27038; FWL013570.

[257] *Cf. Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 711 (9th Cir. 2009) (citing *The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc), *abrogated in part on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)) (upholding agency determination that increased vulnerability of polar bear population would likely not manifest itself in context of oil and gas activities where such effects were speculative because agency "made scientific predictions within the scope of its expertise, the circumstance in which we exercise our greatest deference").

[258] *Arrington*, 516 F.3d at 1106 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)) ("The court is not empowered to substitute its judgment for that of the agency.").

[259] Docket 189 at 15–16.

[260] 422 F. Supp. 2d 1115, 1143 (N.D. Cal. 2006).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 58 of 75

governed by the rule led to a 15% decline per year in off-highway vehicle ("OHV") visitation.[261] The district court agreed, reasoning that because "the agency's own data show that OHV use actually increased after the closures," there was "no factual basis in the record to support the . . . assumption that the closures resulted in a 15% decline in OHV visitation for each year between 2001 and 2004."[262] In *Wilderness Society v. U.S. Forest Service*, the District Court for the District of Idaho reviewed the Forest Service's analysis of its project's impact on water quality standards pursuant to the Clean Water Act.[263] The district court determined that the Forest Service's conclusion was arbitrary and capricious because it was based on the "generalized assumption that closing roads to motorized use will improve water quality" while ignoring evidence that "the existence of roads themselves, without mitigation efforts, may still negatively impact water quality."[264] In contrast to both of these cases, Plaintiffs here point to no relevant data ignored by the Service that contradicts the Service's prediction that "annual harvest [in the Skilak WRA] would maintain reduced density and/or affect behavior" and thereby degrade opportunities for wildlife viewing and

---

[261] *Id.* at 1147.

[262] *Id.* at 1149.

[263] Case No. CV08-363-E-EJL, 2013 WL 5729056, at *4 (D. Idaho Oct. 22, 2013).

[264] *Id.* at *7.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 59 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 59 of 75

education.[265]

Plaintiffs also cite to *Northwestern Environmental Defense Center v. U.S. Army Corps of Engineers*, in which the District Court for the District of Oregon reviewed an agency's biological opinion prepared pursuant to the Endangered Species Act. The biological opinion concluded that a regional permit would not jeopardize endangered salmon populations in the area.[266] The district court held that this determination was arbitrary and capricious because it was based on "unsupported assumptions" that the salmon population was "trending upward in response to improved habitat conditions."[267] The court reasoned that the record showed no increase in the number of fish counted and that "a reasonable explanation is lacking and the population growth is taken as fact."[268] Here, the Service did provide a reasonable explanation, basing its conclusion on "the area's small size, its accessibility by road, proximity to population centers, and likely hunting (or trapping) pressure."[269] This explanation is sufficiently plausible and is

---

[265] 81 Fed. Reg. 27038; FWL013570.

[266] *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, Case No. 3:10-cv-01129-AC, 2013 WL 1294647, at *23 (D. Or. Mar. 27, 2013).

[267] *Id.*

[268] *Id.*

[269] 81 Fed. Reg. 27038; FWL013570.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 60 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 60 of 75

consistent with the evidence before the agency.[270]  A lack of empirical data does not render an otherwise reasonable conclusion based on agency experience arbitrary or capricious.[271]

Because the Service made a rationally supported decision based on predictions within its area of expertise and because Plaintiffs have not pointed to any contrary empirical evidence in the record ignored by the Service, the Court finds that Service's decision to maintain the closure of Skilak WRA to late-season predator hunts is not arbitrary or capricious.

### b. Firearm Discharge Restriction

Plaintiffs maintain that the Kenai Rule's imposition of restrictions on firearms discharges along the Kenai and Russian rivers "do[es] not articulate a rational connection between the facts found and the choices made."[272]  First, Plaintiffs contend that because the "2010 'Kenai River Recreation Study' upon

---

[270] "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n, of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding agency action was arbitrary and capricious because agency failed to provide explanation for rescission of regulation).

[271] "It may have been preferable for the [agency] to support its conclusions with empirical research.  However, it was reasonable for the [agency] to rely on its experience, even without having quantified it in the form of a study."  *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (footnote omitted) (agency decision to impose requirements for placing prisoners in residential re-entry centers was not arbitrary and capricious when it was based on agency experience in absence of empirical data).

[272] Docket 171 at 27.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 61 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 61 of 75

which the [Service] relied did not examine the impact or perceived impact of hunters or firearms on the Kenai River.[273]  Second, they contend that the fact "[t]hat other people were in an undefined 'close proximity'" to bears being shot "does not mean they faced any risk from a hunter using a firearm to take a bear," as evidenced by "the exception for small game and waterfowl hunting.[274]  Plaintiffs additionally assert that the Service failed to consider "the loss of a quality, 'traditional moose and bear hunting area.'"[275]  They maintain that although the area represents a small fraction of the overall Kenai NWR, "[n]othing in the Kenai Rule or Federal Defendants' brief supports the conclusion that 'most hunting' occurs outside of the river corridors."[276]  They also contend that the year-round restriction is overbroad because it covers periods outside of the "primary fishing season from July to mid-August."[277]

Federal Defendants respond that the public safety justification is not undermined by the exception for small game and waterfowl hunting because big game hunting involves "firearms and ammunition with *substantial lethal distances*" whereas "discharging shotguns to take waterfowl generally does not

---

[273] Docket 171 at 27.

[274] Docket 171 at 28.

[275] Docket 171 at 29 (citing 81 Fed. Reg. 27034).

[276] Docket 189 at 30–31.

[277] Docket 189 at 30.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 62 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 62 of 75

involve substantial lethal distances to humans."[278]  It also justifies its reliance on the recreation study because the study was used "as evidence that river usage had become more crowded at times that overlapped with expanded hunting seasons" and note that Plaintiffs "present no alternate study or contrary data that the Service should have considered regarding river usage."[279]  Federal Defendants also maintain that the Service *did* consider the loss of a "traditional moose and bear hunting area."  They assert that the Service "determined that the 'rule will have negligible impacts on overall hunting opportunity'" because the area constitutes a small portion of the total Kenai NWR, most hunting activity occurs outside of it,[280] and because "'reasonable opportunities to hunt' bear and moose 'with firearms in the vicinity of the Russian and Kenai rivers for those wishing to do so will continue to be available outside of the ¼-mile river corridors."[281]  They deny that the year-round restriction is overbroad because the State bear season extends from September 1 to May 31, which overlaps with "increased use of both the Kenai and Russian rivers during fall and spring months" associated with trout fishing, and the restriction has negligible effects on winter bear hunting as bears

---

[278] Docket 178 at 39 (emphasis in original) (quoting 81 Fed. Reg. 27034, FWL013566).

[279] Docket 178 at 39.

[280] Docket 178 at 39–40 (quoting 81 Fed. Reg. 27034, FWL013566).

[281] Docket 201 at 25–26 (quoting 81 Fed. Reg. 27034, FWL013566).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 63 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 63 of 75

hibernate during that time.[282]

The Service reasonably justified its restriction on firearms discharges along the Kenai and Russian rivers by rationally connecting the restriction to public safety concerns. The recreation study provides a plausible basis for the Service's conclusion that increased crowding along the rivers heightens public safety risks associated with large game hunting in the area. Additionally, the restriction is not arbitrary just because no one has been injured so far in the area due to a hunting accident. As discussed above, the Service may rely upon its experience in managing public uses in national wildlife refuges in combination with available information. The Service reasonably concluded that although no one has been injured by a bear hunter in the area, the public safety risk has grown with this increased crowding. The Service is not required to wait for an injury to occur to prove such a plausible conclusion is correct.

The exceptions for waterfowl hunting and dispatching lawfully trapped game do not contradict that conclusion; instead, the exceptions indicate the Service took a reasoned and considered approach to crafting the restriction in order to tailor it to its stated purpose. The restriction is also not arbitrarily overbroad for being in effect year-round. As the Service noted, the State recently extended its brown bear hunting season from September 1 to May 31, and the

---

[282] Docket 201 at 24–25 (quoting 81 Fed. Reg. 27034, FWL013566).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 64 of 75

Case 3:17-cv-00013-SLG    Document 219    Filed 11/13/20    Page 64 of 75

popularity of trout fishing in the fall has grown.[283]  Thus, enforcing the restriction year-round is reasonable to protect public safety.

Contrary to Plaintiffs' assertion, the Service explicitly considered "that the area affected by the proposed firearms discharge prohibition is a traditional moose and bear hunting area" and that some commenters were concerned the rule would negatively affect them.[284]  The Service determined that the restriction "will have negligible impacts on overall hunting opportunity and harvest levels of black bears, brown bears, and moose on the Refuge, as most hunting activity for these species occurs outside of these river corridors."[285]  Plaintiffs disagree with this assessment and refer to the traditional importance of river corridors for hunting opportunities.  However, the record indicates that the Service considered that traditional importance and concluded the rule would not significantly disrupt hunting in the Kenai NWR.  That Plaintiffs disagree with this reasoned conclusion is not a basis for the Court to reverse the agency's decision.[286]

For the foregoing reasons, the restriction on firearms discharges in the Kenai and Russian rivers corridors is not arbitrary or capricious.

### c. Bear Baiting Rule

---

[283] 81 Fed. Reg. 27034; FWL013566.

[284] 81 Fed. Reg. 27034; FWL013566.

[285] 81 Fed. Reg. 27034; FWL013566.

[286] *See Ctr. for Biological Diversity*, 588 F.3d at 711 (noting "scientific predictions within the scope of [agency] expertise" are entitled to "our greatest deference").

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 65 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 65 of 75

Plaintiffs also challenge the Kenai Rule's clarification of bear baiting rules as arbitrary and capricious. They maintain that it "conflicts with an Interior regulation that provides, '[b]aiting is authorized in accordance with State regulations on national wildlife refuges in Alaska."[287] They also assert that the Service "discussed and dispelled notions that baiting conditions 'both brown and black' bears to prefer human food or garbage" in its 2007 CD.[288] Therefore, they allege that it was arbitrary and capricious for the Service to then determine "that a risk of adverse food conditioning arose from hunting bear over bait" in the Kenai Rule without explaining its change of position.[289] Plaintiffs assert that the Service also unexplainedly changed its position from the "policies set forth in the Kenai NWR CCP," which "recognizes reduction of predators as a standard hunting practice that differs from intensive predator management."[290] They allege that the Service "chose to 'bypass' the conflict" by "focusing on the [Intensive Management] statute and its conflict with Refuge mandates," citing a 2013 internal e-mail.[291] They also claim that the Service's conservation justification "lacks a rational basis" because "[r]estricting the method of take does not reduce

---

[287] Docket 171 at 29–30 (quoting 50 C.F.R. § 32.2(h)).

[288] Docket 171 at 30.

[289] Docket 171 at 31.

[290] Docket 171 at 33.

[291] Docket 171 at 33 (quoting FWL001984) (footnote omitted).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 66 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 66 of 75

the harvest level" because "the number of brown bears harvested during a hunting season is established by the State."[292]

Federal Defendants respond that the Service did not change its position from the 2007 CD regarding food conditioning because it always recognized "the *potential*—without conclusive evidence—for baiting to condition bears to human food."[293]  Instead, they assert that the Service "reached a different conclusion about how that potential concern should affect baiting practices" and "explained why it reached a different conclusion."[294]  Federal Defendants also assert that "the Kenai Rule does not 'attempt[] to "bypass" an unexplained change in position'" because "the Kenai Rule does not rely on notions of 'predator control' or predator management."[295]  They contend that "Plaintiffs' sole evidence [to the contrary] . . . is an internal agency email about a different subject."  They maintain that the agency should not be bound by an internal e-mail by an agency employee nor by "a preliminary opinion that 'is later overruled at a higher level within the agency . . . .'"[296]  Regarding the Interior regulation, Federal Defendants maintain

---

[292] Docket 189 at 32.

[293] Docket 178 at 42 (emphasis in original).

[294] Docket 178 at 42.  Intervenor-Defendants add that the Service did not change its position because it has never permitted brown bear baiting in the Kenai NWR.  Docket 185 at 24.

[295] Docket 178 at 43.

[296] Docket 178 at 43 (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658–59 (2007)).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 67 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 67 of 75

that the "parenthetical merely served to clarify that the 'General Provision[]' prohibiting 'hunting over bait . . . on wildlife refuge areas' did not apply to refuges in Alaska . . . ."[297] Instead, Alaskan refuges are "'opened to hunting, fishing and trapping' under ANILCA and governed by 'specific refuge regulations.'"[298]

The 2007 CD was limited to determining the compatibility of black bear baiting.[299] In considering anticipated impacts of black bear baiting, the Service listed several possible risks associated with the practice.[300] One of those risks was "that bears (both brown and black) that travel to a bait station and are rewarded with food or scraps but are not harvested by a hunter, could become conditioned to human food or garbage, making them more likely to become a nuisance or problem bear in the future."[301] The Service determined that "there is no evidence that a bear that is rewarded at a remote bait station is any more or less likely to become a 'garbage bear.'"[302] However, the Service noted that "[t]his issue deserves additional attention . . . and the potential concern for human and

---

[297] Docket 178 at 44 (quoting 58 Fed. Reg. 5065, 5069).

[298] Docket 178 at 44 (quoting 58 Fed. Reg. 5065, 5069).

[299] FWL00066 ("Bear baiting on Kenai National Wildlife Refuge is limited to the regulated placing of food or attractants to hunt black bears in the spring on portions of the Refuge. The use has not been included within the general description of 'hunting' in the Refuge hunting compatibility determination, and is given this separate review primarily because of significant public interest associated with the practice.").

[300] FWL000069–70.

[301] FWL000070.

[302] FWL000070.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 68 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 68 of 75

non-target bear safety around the bait station itself is of interest."[303]  This is similar to the position taken in the Kenai Rule, which references the concern that baiting has the "potential to create food-conditioned bears" and looks to sources to give the issue additional attention.[304]  Thus, the position taken in the Kenai Rule is not in direct conflict with its position in the 2007 CD.

To the extent that there is difference between the two positions, the Service adequately explained its position in the Kenai Rule by citing two sources that provided additional information on the effects of bear baiting on creating food-conditioned bears.[305]  Plaintiffs assert that the Service's "sudden reliance on these sources to justify that a risk of adverse food conditioning arose from hunting bear over bait . . . did not resolve or even explain the conflict with the [Service's] past position on hunting black bears over bait in the 2007 CD."[306]  This Court disagrees for two reasons.  First, as explained above, the Kenai Rule does not conflict with the 2007 CD because the 2007 CD did not take a conclusive position on the issue of food-conditioned bears, noting instead that the issue deserved additional attention.  Second, the Kenai Rule does not conflict with the Service's position on bear baiting in the 2007 CD because the 2007 CD only analyzed the

---

[303] FWL000070.

[304] 81 Fed. Reg. 27037; FWL013569.

[305] 81 Fed. Reg. 27037; FWL013569.

[306] Docket 171 at 31.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 69 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 69 of 75

compatibility of black bear baiting and not brown bear baiting. The Kenai Rule adequately justifies the difference between its position on black bear baiting and brown bear baiting. It explains that "[b]lack bears occur in much higher densities than brown bears on the Kenai Peninsula, have higher reproductive potential than brown bears, and as such can support higher harvest levels and are less susceptible to overharvest."[307] In contrast, the brown bear population is "highly sensitive to adult female and overall human-caused mortality levels," and "timely and accurate monitoring of the status of the Kenai Peninsula brown bear population is extremely difficult at best . . . ."[308]

Plaintiffs' contention that the Service's conservation justification "lacks a rational basis" is also unpersuasive. The Kenai Rule cites ample data showing that liberalized brown bear baiting rules elsewhere on the Kenai Peninsula caused increased human-caused mortality and decreased brown bear populations.[309] While noting that "harvest caps for adult female bears and overall human-caused mortality can help ensure sustainability of harvests," the Service determined that "human-caused mortality *at current harvest caps* . . . would result in a continued reduction of the Kenai brown bear population."[310] Thus, the Service predicted

---

[307] 81 Fed. Reg. 27037; FWL013569.

[308] 81 Fed. Reg. 27037; FWL013569.

[309] 81 Fed. Reg. 27037; FWL013569.

[310] 81 Fed. Reg. 27037; FWL013569 (emphasis added).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 70 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 70 of 75

that given the State's harvest caps, "allowance of take of brown bears over bait on the Refuge would increase human-caused mortality of Kenai brown bears to levels which would continue to reduce the population, with potential to result in conservation concerns for this population."[311]   The Kenai Rule also notes the difficulty of population monitoring, which could be complicated by "the increased effectiveness of harvesting brown bears over bait," and reasonably concluded "that a cautious approach to management of Kenai Peninsula brown bears is scientifically warranted . . . ."[312]

Likewise, the Kenai Rule does not represent an unexplained change in position from the 2010 CCP.  Plaintiffs' evidence is a 2013 internal e-mail sent by an agency employee which states: "I think we can bypass the inconsistency between our past and current positions by focusing on the [Intensive Management] statute and its conflict with Refuge mandates."[313]   This e-mail appears to be in regards to testimony the Service was planning to present to the BOG, rather than the rulemaking process for the proposed Kenai Rule, which was published two years later.  However, even if the e-mail was part of the rulemaking

---

[311] 81 Fed. Reg. 27037; FWL013569.

[312] 81 Fed. Reg. 27037; FWL013569 ("Finally, timely and accurate monitoring of the status of the Kenai Peninsula brown bear population is extremely difficult at best, costs associated with monitoring are high, and funding for monitoring is usually limited and never guaranteed.  This is important given that the increased effectiveness of harvesting brown bears over bait would likely mask the effects of reduced bear densities on harvest success, thereby increasing potential for overharvest in the absence of adequately rigorous population monitoring.").

[313] FWL001984.

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 71 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 71 of 75

process, "agency employees need not be afraid to conduct debates over e-mail."[314]  The final Kenai Rule does not reference predator management.  The agency is not bound by a position taken in an internal e-mail written by an agency employee two years prior to the issuance of the proposed Kenai Rule that was not included in the final rule.

Federal Defendants cite several cases that support this conclusion.  For example, in *National Association of Home Builders v. Defenders of Wildlife*, the respondents challenged an agency's decision to transfer its permitting power to state officials.[315]  The respondents argued that the agency's decision was "internally inconsistent" because it took a different position regarding its statutory obligations during preliminary review than it ultimately adopted in the final rule.[316]  The Supreme Court determined that "the fact that a preliminary determination by a local agency representative is later overruled at a higher level within the agency does not render the decisionmaking process arbitrary and capricious" because "federal courts ordinarily are empowered to review only an agency's *final* action . . . ."[317]

Perhaps recognizing that the Service cannot be bound by this e-mail,

---

[314] *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 717 (10th Cir. 2010).

[315] 551 U.S. 644, 649 (2007).

[316] *Id.* at 658.

[317] *Id.* at 659 (emphasis in original).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 72 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 72 of 75

Plaintiffs assert that the cases cited by Federal Defendants are inapt because "the relevant email does not evidence a preliminary opinion prior to the final agency action or internal discussion during the course of a single agency action; it evidences the reversal, without explanation, of one final agency action (the 2007 CD for baiting) by another (the Kenai Rule)."[318]   This argument essentially collapses the issue back into the argument that the Kenai Rule represents an unexplained change of position from the 2007 CD.  But as discussed above, the Kenai Rule does not mention Intensive Management or predator control and its position on food-conditioning bears is reconcilable with the 2007 CD.

Finally, Plaintiffs' contention that the bear baiting provision is inconsistent with 50 C.F.R. § 32.2(h) is unavailing.  "In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"[319]  50 C.F.R. § 32.2(h) reads: "The unauthorized distribution of bait and the hunting over bait is prohibited on wildlife refuge areas. (Baiting is authorized in accordance with State regulations on national wildlife refuges in Alaska)."  Plaintiffs provide a plausible reading whereby the parenthetical confers

---

[318] Docket 189 at 36.

[319] *United States v. Larionoff*, 431 U.S. 864, 872 (1977) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414 (1945)) (holding that although regulations "contain[ed] a number of ambiguities," Navy's interpretation of Department of Defense regulations controlled since they were "not plainly inconsistent with wording of the regulations").

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 73 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 73 of 75

deference to the State's bear baiting rules. But the Service interprets 50 C.F.R. § 32.2(h) as an explanatory parenthetical that "merely served to clarify that the 'General Provision[]' prohibiting 'hunting over bait . . . on wildlife refuge areas' did not apply to refuges in Alaska, which were 'opened to hunting, fishing and trapping' under ANILCA and governed by 'specific refuge regulations.'"[320] The Service's interpretation is not plainly erroneous nor inconsistent with the wording of the regulation, and therefore controls.

Accordingly, the Court holds that the bear baiting restriction in the Kenai Rule is not arbitrary and capricious.

## CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that Federal Defendants and Intervenor-Defendants' Motions for Summary Judgment at Docket 177 and Docket 184 are GRANTED with respect to challenges to the Kenai Rule pursuant to the Alaska National Interest Lands Conservation Act, the National Wildlife Refuge System Improvement Act, and the Administrative Procedure Act, and also pursuant to the National Environmental Protection Act with respect to the Skilak Wildlife Recreation Area hunting restriction and the bear baiting restriction.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment at Docket 170 is GRANTED solely with respect to the challenge pursuant to the

---

[320] Docket 178 at 44 (quoting 58 Fed. Reg. 5065, 5069).

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 74 of 75

Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 74 of 75

National Environmental Protection Act regarding the firearms restriction in the Kenai River and Russian River corridors. That portion of the Kenai Rule is REMANDED to the Fish and Wildlife Service for further analysis in accordance with the requirements of the National Environmental Protection Act.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 13th day of November, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATE DISTRICT JUDGE

Case No. 3:17-cv-00013-SLG (consol.), *State of Alaska, et al. v. Bernhardt, et al.*
Order re Motions for Summary Judgment
Page 75 of 75
Case 3:17-cv-00013-SLG   Document 219   Filed 11/13/20   Page 75 of 75