**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, *Plaintiff-Appellant*, | No. 21-35030 |
| and | D.C. Nos. 3:17-cv-00013-SLG 3:17-cv-00014-SLG |
| STATE OF ALASKA, *Plaintiff*, | |
| v. | |
| DEBRA HAALAND, in her official capacity as Secretary of the Department of the Interior; MITCH ELLIS, in his official capacity as Chief of Refuges for the Alaska Region of the United States Fish and Wildlife Service; SARA BOARIO, in her official capacity as Alaska Regional Director, United States Fish and Wildlife Service; MARTHA WILLIAMS, in her official capacity as Director of U.S. Fish and Wildlife Service; BERT FROST, in his official capacity as Alaska Regional Director, National Park Service; CHARLES F. SAMS, III, in his official capacity as Director of the National Park Service; | |

UNITED STATES FISH AND
WILDLIFE SERVICE; NATIONAL
PARK SERVICE; U.S.
DEPARTMENT OF THE INTERIOR,
          *Defendants-Appellees*,

ALASKA WILDLIFE ALLIANCE;
ALASKANS FOR WILDLIFE;
FRIENDS OF ALASKA NATIONAL
WILDLIFE REFUGES; DENALI
CITIZENS COUNCIL; COPPER
COUNTRY ALLIANCE;
KACHEMAK BAY
CONSERVATION SOCIETY;
DEFENDERS OF WILDLIFE;
NATIONAL PARKS
CONSERVATION ASSOCIATION;
NATIONAL WILDLIFE REFUGE
ASSOCIATION; NORTHERN
ALASKA ENVIRONMENTAL
CENTER; THE WILDERNESS
SOCIETY, INC.; WILDERNESS
WATCH; SIERRA CLUB; CENTER
FOR BIOLOGICAL DIVERSITY;
THE HUMANE SOCIETY OF THE
UNITED STATES,
          *Intervenor-Defendants-*
                    *Appellees.*

| | |
|---|---|
| STATE OF ALASKA,<br>          *Plaintiff-Appellant*,<br><br>and | No. 21-35035<br><br>D.C. Nos.<br>3:17-cv-00013-SLG<br>3:17-cv-00014-SLG |

SAFARI CLUB INTERNATIONAL,
*Plaintiff*,

v.

DEBRA HAALAND, in her official
capacity as Secretary of the
Department of the Interior;
MITCH ELLIS, in his official
capacity as Chief of Refuges for
the Alaska Region of the United
States Fish and Wildlife
Service; SARA BOARIO, in her
official capacity as Alaska
Regional Director, United States
Fish and Wildlife Service;
MARTHA WILLIAMS, in her
official capacity as Director of
U.S. Fish and Wildlife Service;
BERT FROST, in his official
capacity as Alaska Regional
Director, National Park Service;
CHARLES F. SAMS, III, in his
official capacity as Director of
the National Park Service;
UNITED STATES FISH AND
WILDLIFE SERVICE; NATIONAL
PARK SERVICE; U.S.
DEPARTMENT OF THE INTERIOR,
*Defendants-Appellees*,

ALASKA WILDLIFE ALLIANCE;
ALASKANS FOR WILDLIFE;
FRIENDS OF ALASKA NATIONAL

OPINION

4 SAFARI CLUB INT'L v. HAALAND

WILDLIFE REFUGES; DENALI
CITIZENS COUNCIL; COPPER
COUNTRY ALLIANCE;
KACHEMAK BAY
CONSERVATION SOCIETY;
DEFENDERS OF WILDLIFE;
NATIONAL PARKS
CONSERVATION ASSOCIATION;
NATIONAL WILDLIFE REFUGE
ASSOCIATION; NORTHERN
ALASKA ENVIRONMENTAL
CENTER; THE WILDERNESS
SOCIETY, INC.; WILDERNESS
WATCH; SIERRA CLUB; CENTER
FOR BIOLOGICAL DIVERSITY;
THE HUMANE SOCIETY OF THE
UNITED STATES,

*Intervenor-Defendants-*
*Appellees.*

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted February 18, 2022
San Francisco, California

Filed April 18, 2022

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Jennifer G. Zipps,[*] District Judge.

Opinion by Judge Gould

---

## SUMMARY[**]

### Environmental Law

The panel affirmed the district court's summary judgment in favor of the U.S. Fish and Wildlife Service (the "Service") in cases brought by the State of Alaska and Safari Club International ("plaintiffs") alleging that the Service violated federal environmental laws by enacting the Kenai Rule, which limits certain hunting practices approved by the State in the Kenai National Wildlife Refuge near Anchorage, Alaska.

---

[*] The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In May 2016, the Service published a final rule – the Kenai Rule – codifying its ban on baiting of Kenai Refuge brown bears, and its closing of the Skilak Wildlife Recreation Area ("Skilak WRA") to coyote, wolf, and lynx hunts.

The panel held that the Alaska National Interest Lands Conservation Act ("ANILCA") preserved the federal government's plenary power over public lands in Alaska. The panel rejected plaintiffs' two arguments that the Service exceeded its statutory authority in enacting the Kenai Rule. First, they asserted that the Alaska Statehood Act and ANILCA stripped the Service of the power to restrict the means, methods, or scope of State-approved hunting on federal lands in Alaska. The panel held that while it was true that the Alaska Statehood Act transferred administration of wildlife from Congress to the State, this transfer did not include lands withdrawn or otherwise set apart as refuges or reservations for the protection of wildlife – like the Kenai Refuge, which remains under federal control. Hunting within the Kenai Refuge is subject to federal law, including any regulations imposed by the Secretary of the Interior under its delegated statutory authority to manage federal lands. This specific mandate prevailed over ANILCA's general recognition of the State's concurrent authority to manage wildlife on public lands. If Alaska state law conflicts with federal hunting regulations, the federal regulations prevail under standard principles of conflict preemption. Second, plaintiffs contended that even if the Service could preempt the State's hunting regulations on federal lands in Alaska, the Kenai Rule violated a 2017 congressional joint resolution revoking the Refuges Rule, which expanded the ban on brown bear baiting to all Alaskan wildlife refuges and restricted other hunting. The panel held that this claim was unsupported by the law. The 2017 joint

resolution only pertained to the Refuges Rule – not the Kenai Rule. Accordingly, the 2017 joint resolution that disapproved of the Refuges Rule did not void the Kenai Rule.

The panel rejected Safari Club's contention that the Skilak WRA aspect of the Kenai Rule violated the National Wildlife Refuge System Improvement Act of 1997 ("Improvement Act") by disfavoring the compatible priority use of hunting relative to the other compatible priority uses and compatible non-priority uses of the Skilak WRA. Designation of the Skilak WRA as a special area to be managed for non-competitive uses was a permissible exercise of the Service's authority under ANILCA. The Improvement Act did not require the Service to allow all State-sanctioned hunting throughout the Kenai Refuge.

The panel rejected plaintiffs' numerous arguments that the Service violated the Administrative Procedure Act ("APA") by acting arbitrarily and capriciously in issuing the Kenai Rule. Specifically, plaintiffs claimed that the Service acted arbitrarily and capriciously in issuing the brown bear baiting aspect of the Kenai Rule because: (1) it conflicted with a different regulation; (2) the Service improperly considered a predator control factor not contemplated by Congress; (3) its conservation basis was improper; and (4) its public safety justification was not grounded in evidence in the record and constituted an unexplained change in position by the Service. The panel concluded that these points were inapt. Apart from its APA claims as to brown bear hunting, Safari Club argued that the Skilak WRA hunting part of the Kenai Rule was arbitrary and capricious because: (1) the Service did not articulate any sufficient basis for banning coyote, lynx, and wolf hunting in the Skilak WRA; (2) the record undercut the Service's finding

that hunting in the Skilak WRA would bother recreation; (3) the Service did not explain the basis for its changed position on coyote, lynx, and wolf hunting within the Skilak WRA; and (4) the district court applied the incorrect legal standard in disposing of the APA claims concerning the Skilak WRA. The panel disagreed with all of these arguments. Finally, Safari Club claimed that enactment of the Kenai Rule was procedurally improper because the Service did not make necessary predicate findings that the baiting of brown bears and the hunting of coyotes, lynx, and wolves in the Skilak WRA were incompatible with refuge purposes. This assertion relied on a 2007 compatibility determination ("CD") where the Service classified hunting of brown bears as a compatible use of the Kenai Refuge. The panel held that ANILCA did not require the Service to follow any formal procedures or issue any findings before regulating uses of the Kenai Refuge. The Service exercised its power based on various factors, and addressed all of these factors in the Kenai Rule. The Service complied with the requisite procedures, and reversal on procedural grounds was unwarranted. The panel rejected Safari Club's request to disturb the district court's summary judgment on grounds relating to the 2007 CD.

The panel rejected plaintiffs' two-part National Environmental Policy Act ("NEPA") argument. They asserted that the Kenai Rule changed the environmental status quo in Kenai Refuge such that NEPA review was required; and that the Service improperly fulfilled its NEPA obligations for the Kenai Rule through categorical exclusions (CE). Assuming NEPA procedures applied to the Kenai Rule, an agency satisfies NEPA if it applied its CEs and determined that neither an environmental assessment (EA) nor an environmental impact statement (EIS) was required, so long as applications of the exclusions were not

arbitrary and capricious. The panel held that the Service sensibly decided that the Kenai Rule fit a CE for "issuance of special regulations for public-use of [Service]-managed land, which maintain essentially the permitted level of use and do not continue a level of use that resulted in adverse environmental impacts." 81 Fed. Reg. 27033. The panel concluded that there was no basis for reversal. The panel also rejected plaintiffs' contention that "extraordinary circumstances" required an EIS or EA for the Kenai Rule. The panel rejected plaintiffs request for remand of the Kenai Rule to the Service for further NEPA analysis. To the extent there were any errors, such errors were harmless.

## COUNSEL

Jeremy E. Clare (argued) and Regina Lennox, Safari Club International, Washington, D.C., for Plaintiff-Appellant Safari Club International.

Jessica M. Alloway (argued), Solicitor General, Civil Appeals; Treg R. Taylor, Attorney General; Office of the Attorney General, Anchorage, Alaska; for Plaintiff-Appellant State of Alaska.

Kevin W. McArdle (argued), Rachel Heron, and Michael S. Sawyer, Attorneys; Todd Kim, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Kenneth M. Lord, Attorney, United States Department of the Interior, Washington, D.C.; for Defendants-Appellees.

Rachel Genna Briggs (argued), Katherine Strong, and Brian Litmans, Trustees for Alaska, Anchorage, Alaska, for Intervenor-Defendants-Appellees.

# OPINION

GOULD, Circuit Judge:

Plaintiffs-Appellants State of Alaska (the State) and Safari Club International separately sued Defendant-Appellees Debra Haaland, *et al.*, under the theory that the United States Fish and Wildlife Service (FWS) violated the Alaska National Interest Lands Conservation Act (ANILCA), National Wildlife Refuge System Improvement Act of 1997 (Improvement Act), Administrative Procedure Act (APA), and National Environmental Policy Act (NEPA) by enacting the Kenai Rule, which limits certain hunting practices approved by the State in the Kenai National Wildlife Refuge (the Kenai Refuge) near Anchorage, Alaska. The premise of these lawsuits is that the State, and not the federal government, has the ultimate regulatory authority over hunting on federal lands in Alaska. The district court disagreed and entered summary judgment in favor of FWS. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. In so doing, we hold that ANILCA preserves the federal government's plenary power over public lands in Alaska. We also reject the Improvement Act, APA, and NEPA arguments set out by the State and Safari Club.

## I. STATUTORY BACKGROUND

### A. ANILCA

ANILCA gives the State primary responsibility for the administration of its wildlife, but FWS manages federal lands in Alaska and regulates human activities therein. ANILCA, Pub. L. No. 96-487 § 1314, 94 Stat. 2383 (1980), *codified at* 16 U.S.C. § 3202(a)–(c). And ANILCA operates such that the taking of wildlife on federal lands in Alaska is governed by state law unless it is further limited by federal

law, 50 C.F.R. § 36.32(c)(1)(i), or "incompatible with documented Refuge goals, objectives, or management plans." 81 Fed. Reg. 27030, 27033 (May 5, 2016).

## B. The Improvement Act

The Improvement Act states that its enumerated "wildlife-dependent recreational activities," namely hunting, fishing, wildlife observation and photography, and environmental education and interpretation, "shall receive priority consideration in refuge planning and management" if they are compatible with the purpose of a wildlife refuge. 16 U.S.C. §§ 668dd(a)(3)(C), 668ee(2). The Improvement Act further directs FWS to work with state agencies, 16 U.S.C. §§ 668dd(a)(4)(E), (M), and adopt regulations permitting hunting and fishing within national wildlife refuges, which "shall be, to the extent practicable, consistent with [s]tate fish and wildlife laws, regulations, and management plans," 16 U.S.C. § 668dd(m).

## C. NEPA

NEPA requires federal government agencies to consider the environmental impact of their ongoing activities. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). The purposes of this law include directing federal government agencies to look at alternatives to any action with significant impact on the environment and educating the public about the consequences of such actions so that the public's voice can be heard. *See Lands Council v. Powell*, 395 F.3d 1019, 1027 (9th Cir. 2005). NEPA requires federal government agencies to complete an environmental impact statement (EIS) for projects that may significantly impact the environment. 42 U.S.C. § 4332(C). However, federal government agencies are also permitted to perform an environmental assessment (EA) "on any action

in order to assist agency planning and decision making," 40 C.F.R. § 1501.5(b), and classify particular activities that generally do not significantly impact the environment as categorical exclusions (CE) for which an EIS or EA is typically not required absent extraordinary circumstances, 40 C.F.R. § 1501.4.

## II. FACTS AND PROCEDURAL HISTORY

In 2013, the State determined that the Kenai brown bear population, which was previously "of special concern" due to habitat loss and human-caused mortality, had grown to a level that justified the permitting of additional brown bear hunting. The Alaska Board of Game (Board) expanded the availability of brown bear hunting permits, extended the brown bear hunting season, increased relevant harvest limits, and approved the taking of brown bears through baiting at registered black bear stations in the Kenai Refuge. The Board also opened a specific area of the Kenai Refuge called the Skilak Wildlife Recreation Area (Skilak WRA) to the seasonal hunting of coyotes, lynx, and wolves. *See* 5 AAC § 92.530(6).

FWS disagreed with these Board actions because it concluded that the changes as to brown bears would cause unsustainable harvest levels and human-caused mortality. FWS also opposed opening the Skilak WRA to coyote, wolf, and lynx hunting as "inconsistent with [its] management objectives for the area." Still, the Board did not change its course, and so FWS blocked the Board's authorization of brown bear baiting at black bear stations in the Kenai Refuge in 2013 and 2014. 81 Fed. Reg. 27036. FWS also closed the Skilak WRA to the newly approved coyote, lynx, and wolf hunting before the season started. 78 Fed. Reg. 66061, 66061–62 (Nov. 4, 2013) (applying 50 C.F.R. § 36.42).

In May 2015, FWS published a proposed rule (Kenai Rule) to codify its ban on baiting of Kenai brown bears and its closing of the Skilak WRA to coyote, wolf, and lynx hunts. 80 Fed. Reg. 29277, 29278–80 (May 21, 2015). FWS did not complete an EIS or EA for the proposed Kenai Rule on the basis that it fit a CE tailored to new regulations "which maintain essentially the permitted level of use" of federal lands. 80 Fed. Reg. 29281. The agency published the final Kenai Rule, which was largely identical to the proposed rule, in May 2016. 81 Fed. Reg. 27045, *codified at* 50 C.F.R. §§ 36.39(i)(5)(ii), (6). FWS did not perform an EIS or EA for the final Kenai Rule because it fit the agency's CE for regulations which maintain permitted levels of use. 81 Fed. Reg. 27043 (citing 43 C.F.R. § 46.210).

FWS later enacted a new rule (Refuges Rule) that expanded the ban on brown bear baiting to all Alaskan wildlife refuges and restricted State-authorized hunting deemed by FWS to constitute "intensive management" or "predator control," which is defined as reducing predator populations to increase prey numbers. 81 Fed. Reg. 52248, 52252 (Aug. 5, 2016). FWS justified this Refuges Rule by stressing conservation of brown bears and the State's liberalization of regulations on bear, wolf, and coyote hunting. 81 Fed. Reg. 52261–63.

Congress abrogated the Refuges Rule in 2017 by passing a joint resolution under the Congressional Review Act. Pub. L. No. 115-20, 131 Stat. 86 (2017). If an agency's rule is canceled in this way, the agency cannot issue "a new rule that is substantially the same" as the disapproved rule unless the relevant law changes. 5 U.S.C. § 801(b)(2). We upheld this joint congressional resolution disapproving of the Refuges Rule on the ground that the joint resolution "validly amended Interior's authority to administer national wildlife

refuges in Alaska," *Ctr. for Biological Div. v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019), such that FWS cannot enforce the Refuges Rule or enact a substantively identical new rule absent a change in the law, *id.* at 557 (citing 5 U.S.C. § 801(b)(1)–(2)), 562 ("By enacting the Joint Resolution, Congress amended the substantive environmental law and deprived the Refuges Rule of any force or effect.").

The State and Safari Club filed separate lawsuits alleging that the Kenai Rule's ban on baiting of brown bears and hunting of coyotes, lynx, and wolves in the Skilak WRA violates ANILCA, the Improvement Act, the APA, and NEPA. The district court consolidated these cases, permitted the Alaska Wildlife Alliance to intervene as a defendant, and then granted summary judgment in favor of FWS on all of the claims asserted by the State and Safari Club. This timely appeal followed.

## III. STANDARDS OF REVIEW

We review *de novo* issues of preemption and statutory interpretation, *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021), summary judgment orders on the validity of agency actions, *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014), and whether the agency complied with NEPA, *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1069–70 (9th Cir. 2002). This requires direct review of "the agency's action under the APA's arbitrary and capricious standard." *Kalispel Tribe of Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 688 (9th Cir. 2021) (cleaned up).

Under the arbitrary and capricious standard, we must set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in

excess of statutory jurisdiction, or without observance of procedure required by law." *Id.* Our scope of "review is narrow and we cannot substitute our judgment for that of the agency." *Id.* Reversal is appropriate "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* A challenged agency action may otherwise be affirmed. *See id.*

## IV.  ANALYSIS

### A.  The ANILCA Claims

The State and Safari Club set out two main arguments that FWS exceeded its statutory authority in enacting the Kenai Rule.  First, they assert that the Alaska Statehood Act and ANILCA strip FWS of the power to restrict the means, methods, or scope of State-approved hunting on federal lands in Alaska.  Second, they contend that even if FWS can preempt the State's hunting regulations on federal lands in Alaska, the Kenai Rule violates the 2017 congressional joint resolution revoking the Refuges Rule.  They are incorrect.

### i.

The assertion by the State and Safari Club that FWS cannot limit the means, method, or scope of hunting on federal lands in Alaska is best understood as follows.  The federal government ceded all management authority over the wildlife on public lands in Alaska to the State via the Alaska Statehood Act.  Pub. L. No. 85-508 § 6(e), 72 Stat. 339 (1984); 25 Fed. Reg. 33, 33 (Jan. 5, 1960).  And ANILCA § 1314(a), which functions as a savings clause, states that

"[n]othing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands." 16 U.S.C. § 3202(a). That is wrong.

It is true that the Alaska Statehood Act transferred administration of wildlife from Congress to the State. Pub. L. No. 85-508 § 6(e). But this "transfer [did] not include lands withdrawn or otherwise set apart as refuges or reservations for the protection of wildlife" like the Kenai Refuge, which remain under federal control. *Id*. And "Congress has authority under the Property Clause of the Constitution to 'make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.'" *Bernhardt*, 946 F.3d at 557–58 (quoting U.S. Const., art. IV, § 3, cl. 2). This "includes the power to regulate and protect the wildlife living there." *Kleppe v. N.M.*, 426 U.S. 529, 541 (1976). Such federal legislation "overrides conflicting state laws under the Supremacy Clause" because using "[a] different rule would place the public domain of the United States completely at the mercy of state legislation." *Id*. at 543. And Congress "delegated its authority under the Property Clause to manage the federal wildlife refuges in Alaska to the [Department of the Interior]." *Bernhardt*, 946 F.3d at 561.

Consistent with these authorities, ANILCA gives the Secretary of the Interior the power to manage the public lands in Alaska, 16 U.S.C. § 3202(b), and all hunting therein "shall be carried out in accordance with the provisions of this Act and other applicable State and Federal law," 16 U.S.C. § 3202(c). In this context, hunting within the Kenai Refuge is subject to federal law, including any regulations imposed by the Secretary of the Interior under its delegated statutory authority to manage federal lands. *See Nat'l Ass'n of Home*

*Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (cleaned up)). That specific mandate prevails over ANILCA's general recognition of the State's concurrent authority to manage wildlife on public lands. *See* 16 U.S.C. § 3202(a); *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994) ("It is a well-settled canon of statutory interpretation that specific provisions prevail over general provisions."). And, if Alaska state law conflicts with federal hunting regulations, the latter control under standard principles of conflict preemption. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 854 (9th Cir. 2002); *accord Bernhardt*, 946 F.3d at 558 ("Alaska's laws for managing [its] wildlife are applicable in the national wildlife refuges in the state unless preempted by federal law.").

For these reasons, the Department of the Interior need not defer to the State's hunting regulations. FWS may restrict State-authorized hunting in the Kenai Refuge to, *inter alia*, conserve wildlife. ANILCA §§ 303(4)(B)(i), 304(b), 304(g)(2)(A); 16 U.S.C. §§ 668dd(a)(3)(D), (a)(4)(A), (d)(3)(A)(i); 50 C.F.R. § 36.32(c)(1)(i) (requiring that hunters in Alaskan refuges "shall comply with the applicable provisions of State law unless further restricted by Federal law"). Not only do the cited legal principles and laws tell us that federal law has primacy over federal lands, but also common sense tells us the same. The federal government, and not a single state, has control over federal lands which benefit the entire country.

The State and Safari Club seek a contrary conclusion based on *Sturgeon v. Frost*, 139 S. Ct. 1066 (2019). But *Sturgeon*'s holding that private land in Alaskan national parks is exempt from federal regulation is irrelevant. *See id.*

at 1080–85. FWS regulations, including the Kenai Rule, "are applicable only on federally-owned lands within the boundaries of any Alaska National Wildlife Refuge." 50 C.F.R. § 36.1(b). In any case, *Sturgeon* reiterates that ANILCA vests the Secretary of the Interior with plenary authority "to protect—if need be, through expansive regulation—'the national interest in the scenic, natural, cultural and environmental values on the public lands.'" 139 S. Ct. at 1087 (quoting 16 U.S.C. § 3101(d)). This delegated plenary authority to protect the value of public lands within Alaska includes maintaining "sound populations of [] wildlife species of inestimable value." *See* 16 U.S.C. § 3101(a)–(b). *Sturgeon* accordingly supports the continued existence of the Kenai Rule.

In the alternative, the State urges that relief is proper because two 2013 letters from FWS to the State prove FWS wrongly enacted the Kenai Rule to preempt the State's predator control initiatives. But these letters do not help the State. "[C]ourts ordinarily are empowered to review only an agency's *final* action," *Home Builders*, 551 U.S. at 659, based on "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If "there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding" alone. *Vt. Yankee Nuclear Power Corp. v. N.R.D.C.*, 435 U.S. 519, 549 (1978) (cleaned up). And we "may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons" for acting. *Dep't of Com. v. N.Y.*, 139 S. Ct. 2551, 2573 (2019). The lack of any "intensive management" or "predator control" justifications in the final Kenai Rule, 81 Fed. Reg. 27030–48, defeats the State's claim that FWS inappropriately promulgated the Kenai Rule to restrict the

State's predator control programs.  *See Dep't of Com.*, 139 S. Ct. at 2573.

### ii.

The State otherwise asserts that, even if FWS can restrict State-approved hunting on federal lands in Alaska, the 2017 congressional joint resolution canceling the Refuges Rule substantively amended ANILCA and other statutes such that it voided the Kenai Rule.  This claim is unsupported by the law and we reject it.

The first problem for the State is that the 2017 joint resolution only pertains to the Refuges Rule and does not mention the Kenai Rule.  *See Bernhardt*, 946 F.3d at 559 (reciting the joint resolution).  As a result, this joint resolution does not indicate congressional intent concerning the Kenai Rule.  *See* 5 U.S.C. § 801(g) ("If the Congress does not enact a joint resolution of disapproval [] respecting a rule, [then] no court or agency may infer any intent of the Congress from any action or inaction of the Congress with regard to such rule.").  This principle, standing alone, defeats the State's argument that the 2017 joint resolution concerning the Refuges Rule repealed the Kenai Rule by implication.

The State also misconstrues the scope of the 2017 joint resolution, which amends the law only in the sense that FWS cannot manage public lands in Alaska through the Refuges Rule or a new administrative rule that is substantively identical.  *Bernhardt*, 946 F.3d at 557 (citing 5 U.S.C. § 801(b)(1)–(2)), 562.  Applying these principles, the State's reliance on this joint resolution is unavailing with regard to the Kenai Rule.  The State does not allege that FWS is still enforcing the Refuges Rule.  The Kenai Rule is not a "new rule" relative to the Refuges Rule because the Kenai Rule is

the older of the two rules, a fact the State admits. Nor are
the Refuges Rule and Kenai Rule substantively identical.
The Refuges Rule blanketly excluded the baiting of brown
bears and State predator control programs from all national
wildlife refuges in Alaska. 81 Fed. Reg. 52252. The Kenai
Rule does not do this. It only forbids baiting of brown bears
in the Kenai Refuge and prohibits the hunting of coyotes,
lynx, and wolves within the Skilak WRA. 81 Fed. Reg.
27045. For these reasons, the 2017 joint resolution that
disapproved of the Refuges Rule does not void the Kenai
Rule.

## B. The Improvement Act Claim

Safari Club contends that the Skilak WRA aspect of the
Kenai Rule violates the Improvement Act by disfavoring the
compatible priority use of hunting relative to the other
compatible priority uses and compatible non-priority uses of
the Skilak WRA. We disagree.

ANILCA authorizes FWS to prepare conservation plans
designating different "areas within [the Kenai Refuge]
according to their respective resources and values," and set
"the uses within each such area which may be compatible
with the major purposes of the refuge." ANILCA
§ 304(g)(3)(A)(i)–(iii). Designation of the Skilak WRA as a
special area to be managed for non-consumptive uses is a
permissible exercise of this authority. *See id.* Safari Club's
reliance on the status of hunting as a priority compatible
use of the Kenai Refuge is unavailing. The Improvement Act
does not require FWS to allow all State-sanctioned hunting
throughout the Kenai Refuge. 16 U.S.C. § 668dd(a)(3)(D).
Nor does the Improvement Act's statement that FWS
hunting regulations "shall be, to the extent practicable,
consistent with [s]tate fish and wildlife laws, regulations,
and management plans" help Safari Club here. 16 U.S.C.

§ 668dd(c), (m).    ANILCA authorizes FWS to enact regulations preempting State-approved hunting in the Kenai Refuge, *Bernhardt*, 946 F.3d at 558, and when ANILCA and the Improvement Act are in tension, the former prevails, *see* Pub. L. 105-57 § 9(b), 111 Stat. 1252, 1260 (1997).

## C.  The APA Claims

The State and Safari Club raise a series of arguments that FWS violated the APA by acting arbitrarily and capriciously in issuing the Kenai Rule.  These contentions do not justify invalidation of the Kenai Rule on appeal.

### i.

The State and Safari Club claim that FWS acted arbitrarily and capriciously in issuing the brown bear baiting aspect of the Kenai Rule because: (1) it conflicts with a different regulation; (2) FWS improperly considered a predator control factor not contemplated by Congress; (3) its conservation basis is improper; and (4) its public safety justification is not grounded in evidence in the record and constitutes an unexplained change in position by FWS.  We conclude that these points are inapt.

### a.

The conflicting regulation argument relies on the parenthetical in 50 C.F.R. § 32.2(h), which states that "unauthorized distribution of bait and the hunting over bait is prohibited on wildlife refuge areas.  (Baiting is authorized in accordance with State regulations on national wildlife refuges in Alaska)."  Per Safari Club, this parenthetical requires FWS to defer to all of the State's bear baiting laws. That is incorrect.

"In discerning the meaning of regulatory language, our task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation." *Norfolk Energy, Inc. v. Hodel*, 898 F.2d 1435, 1442 (9th Cir. 1990) (citation omitted).

Applying this principle, we note that the parenthetical was added to 50 C.F.R. § 32.2(h) to "avoid confusion between the general provision prohibiting baiting on refuges and the Service's policy of permitting hunting on national wildlife refuges in Alaska in accordance with state regulations." 49 Fed. Reg. 50017, 50049-01 (Dec. 26, 1984). In addition, FWS must maintain sound wildlife populations on its refuges, ANILCA § 303(4)(B)(i), 303(4)(B)(v), 304(b); 16 U.S.C. §§ 668dd(a)(4), 3101(b). And 50 C.F.R. § 32.2(h) has several companion regulations that inform its meaning. *See* 50 C.F.R. §§ 36.31(b), 32.32(a), 36.34, 36.42; *Hodel*, 898 F.2d at 1442. In this context, the meaning of the parenthetical is clear. The general ban on bear baiting in refuges does not apply in Alaska. But FWS may limit State-approved bear baiting on Alaskan refuges "in accordance with the provisions of § 36.42," which call for conservation of wildlife, management of refuges consistent with their purposes, and public safety. *See* 50 C.F.R. § 36.31(b). That means the parenthetical relied upon by Safari Club does not strip FWS of its authority to enact specific regulations restricting bear baiting in refuges, and these specific regulations will prevail over the general parenthetical. *See Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *accord A-Plus Roofing*, 39 F.3d at 1415.

### b.

The State urges us to void the Kenai Rule on the basis that FWS improperly considered a predator control factor

not contemplated by Congress, as shown by its alleged focus on the success rate of bear baiting. We decline to do so because we review final agency actions and the rationales therein, *Vt. Yankee*, 435 U.S. at 549; *Dep't of Com.*, 139 S. Ct. at 2573, and the final Kenai Rule does not mention "predator control."

**c.**

Safari Club makes two discrete sub-arguments as to the conservation basis for the Kenai Rule. First, Safari Club contends that the higher brown bear mortality cited in the Kenai Rule stems from the State's increased harvest cap on brown bears, not the practice of bear baiting. Per Safari Club, the Kenai Rule is futile because it does not reduce the harvest levels set by the State and has no real conservation impact. Second, Safari Club maintains that the brown bear baiting element of the Kenai Rule violates a previous refuge management plan that endorsed predator control. On our examination of the record and applicable law, we conclude that Safari Club is wrong on both of those contentions.

It is true that FWS has no authority over harvest caps set by the State, or the number of brown bears killed outside the Kenai Refuge. But FWS has a statutory duty to conserve brown bears in the Kenai Refuge. ANILCA §§ 303(4)(B)(i), 304(b); 16 U.S.C. §§ 668dd(a)(4)(A), 3101(b). The Kenai Rule relates only to the refuge and offers a comprehensive and reasonable explanation as to why its ban on baiting will conserve the Kenai Refuge brown bear population. 81 Fed. Reg. 27035–37.

Kenai brown bears are a small, isolated population with "one of the lowest reproductive potentials of any North American mammal." 81 Fed. Reg. 27035. In 2013, the year before the State allowed brown bear baiting, twelve brown

bears were harvested in Game Management Unit 7, which borders the Kenai Refuge.  81 Fed. Reg. 27036.  In 2014, the first year of brown bear baiting outside the Kenai Refuge, thirty-eight brown bears, twenty-eight of which were taken over bait, were harvested in Game Management Unit 7.  *Id.*  And forty of the sixty-five brown bears harvested on the peninsula surrounding the Kenai Refuge in 2014, or sixty-two percent of such takes, were from bear baiting.  *Id.*  After modeling this harvest data and the associated brown bear population trends, FWS concluded that "allowance of take of brown bears over bait [in the Kenai Refuge] would increase human-caused mortality [] to levels which would continue to reduce the population, with potential to result in conservation concerns to this population" of Alaskan brown bears.  81 Fed. Reg. 27036–37.

Given this context, Safari Club's contention that the Kenai Rule will not help conserve brown bears in the refuge cannot stand.  The record readily supports FWS' conclusion that baiting of brown bears in the Kenai Refuge would significantly increase brown bear mortalities in the refuge "due to its high degree of effectiveness as a harvest method." 81 Fed. Reg. 27036.  And the agency reasonably concluded from this information that prohibiting baiting would help conserve the brown bears in the Kenai Refuge as required by ANILCA and the Improvement Act, irrespective of the State's harvest cap on brown bears.  81 Fed. Reg. 27035–37.

Safari Club further urges that an internal FWS email is evidence that the conservation concerns undergirding the brown bear baiting part of the Kenai Rule are unavailing because they are grounded in predator control and contradict a 2010 management plan allegedly endorsing predator control in the refuge.  But this email is not part of the final Kenai Rule and the accompanying explanation for that rule's

adoption, to which the scope of our review is limited. *See Home Builders*, 551 U.S. at 659; *Chenery Corp.*, 332 U.S. at 196. The final Kenai Rule does not cite predator control and we cannot "reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons" for acting as it did. *Dep't of Com.*, 139 S. Ct. at 2573. In any event, this cited FWS email does not even mention the Kenai Rule and its relevance to this case has not been established by Safari Club.

**d.**

The State and Safari Club assert that the brown bear baiting part of the Kenai Rule is arbitrary and capricious because its public safety rationale is an unexplained change in agency position from FWS' authorization of black bear baiting in a 2007 compatibility determination (CD) for the Kenai Refuge. This claim is accompanied by an argument that the public safety basis for the bear baiting part of the Kenai Rule is unsupported by the record. We conclude that the State and Safari Club misconstrue the conclusions of the 2007 CD and the Kenai Rule administrative record, so we affirm the district court's ruling on this issue.

Both the State and Safari Club read the 2007 CD as stating that bear baiting is not a public safety hazard. They are wrong. Because FWS lacked evidence on the issue, the 2007 CD did not reach a definitive conclusion on whether baiting increases the risk that bears will become conditioned to human food and threaten public safety. FWS instead determined that the problem of bear conditioning to human food "deserves additional attention . . . and the potential concern for human and non-target-bear safety around the bait station itself is of interest." Although FWS designated black bear baiting as a compatible use of the Kenai Refuge, it cautioned that such baiting "is tightly controlled currently

to ensure compatibility. Attention will be given to the program in the future as well to determine if additional changes are warranted, in particular to any developing human safety concerns or noticeable impacts to the area's brown bear population."

There is no conflict between the Kenai Rule and the 2007 CD because the Kenai Rule revisited the bear food-conditioning and public safety questions left open in the 2007 CD. 81 Fed. Reg. 27037. In enacting the Kenai Rule, FWS cited two studies not discussed in the 2007 CD (the Herrero Books) for the proposition that "food-conditioning of bears results in increased potential for negative human-bear encounters and increased risk to public safety." *Id*. The Herrero Books explain the dangers from bears that are habituated to people or have learned to feed on human food, highlight that habituation combined with food-conditioning "has been associated with a large number of injuries" to humans, and indicate food-conditioning of bears may result from exposure to human food at bait stations. The Kenai Rule also cited data that, when the State authorized brown bear baiting outside the Kenai Refuge, such baiting greatly increased, which engendered an "increased potential for human-bear conflicts." 81 Fed. Reg. 27037 (explaining that the number of bear baiting stations grew by 100 after the State allowed baiting of brown bears).

Considering this information, FWS reasonably concluded that allowing brown bear baiting in the Kenai Refuge will cause public safety issues by exacerbating habituation and food-conditioning and increasing the number of adverse human-bear interactions at baiting stations. 81 Fed. Reg. 27037. To the extent that the State and Safari Club claim the public safety basis for the bear baiting aspect of the Kenai Rule is void for lack of data, they

are incorrect. An agency need not "support its conclusions with empirical research" and can "rely on its experience, even without having quantified it in the form of a study." *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010).

Safari Club urges a contrary conclusion on the basis that the Herrero Books are irrelevant because they do not address bear baiting but instead pertain to garbage dumps and a past but discontinued federal practice of feeding bears in national parks. This argument is futile. We substantially defer to agency scientific determinations, *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983), especially if they require technical expertise, *Locke*, 776 F.3d at 994. And in claiming bear baiting and food-conditioning are dissimilar, Safari Club overlooks the suggestion in the Herrero Books that food-conditioning of bears can occur at baiting stations and creates increased public safety risks. 81 Fed. Reg. 27037.

No proper ground for reversal exists here. FWS rationally set out its reasons for enacting the Kenai Rule, *see In re Big Thorne Project*, 857 F.3d 968, 976 (9th Cir. 2017) ("[T]he agency must rationally explain why it did what it did."), and we are not a panel of scientists empowered to instruct agencies on how to choose among scientific studies, nor can we correctly order the agency to explain every possible uncertainty in scientific realms that are properly entrusted to its expertise, *see Bair v. Calif. Dep't of Transp.*, 982 F.3d 569, 578 (9th Cir. 2020). Applying these principles, we reject the assertions by the State and Safari Club with regard to the public safety justification of the brown bear baiting part of the Kenai Rule and affirm the grant of summary judgment for FWS on this issue. *See Balt. Gas & Elec. Co.*, 462 U.S. at 103; *Locke*, 776 F.3d at 994. The responsible federal agency, here FWS, has presumptive

scientific expertise on how practices of feeding brown bears may relate to human safety and the likelihood that the endangered bear population can be maintained or increased.

### ii.

Apart from its APA claims as to brown bear baiting, Safari Club argues that the Skilak WRA hunting part of the Kenai Rule is arbitrary and capricious because: (1) FWS did not articulate any sufficient basis for banning coyote, lynx, and wolf hunting in the Skilak WRA; (2) the record undercuts FWS' finding that hunting in the Skilak WRA will curb other recreation; (3) FWS did not explain the basis for its changed position on coyote, lynx, and wolf hunting within the Skilak WRA; and (4) the district court applied the incorrect legal standard in disposing of the APA claims concerning the Skilak WRA. We disagree.

### a.

Safari Club challenges the Skilak WRA aspect of the Kenai Rule on the basis that it is unsupported by area-specific data or studies, or studies of animal behavior outside the Skilak WRA. In addition, Safari Club insists that the Kenai Rule's ban on hunting of coyotes, lynx, and wolves should be vacated because it is the product of conjecture by FWS. Neither contention warrants reversal of the summary judgment order.

There are no site-specific studies concerning how the hunting of coyotes, lynx, and wolves in the Skilak WRA would affect those species because this area has been closed to such hunting for decades. 81 Fed. Reg. 27038. FWS cannot cite nonexistent studies in the rulemaking process. *See Locke*, 776 F.3d at 995 (holding that federal agencies need not carry out "new tests or make decisions on data that

does not yet exist"). And Safari Club identifies no studies on how hunting impacts the behavior of coyotes, lynx, and wolves outside of the Skilak WRA, so FWS cannot be faulted for not relying on such materials. *See id.* In such a situation, where the record is devoid of pre-existing studies to clarify the impact of policies on threatened animal species, the default rule is to rely on a specialized federal agency's presumptive expertise in the subject. *See Far East Conf. v. U.S.*, 342 U.S. 570, 574–75 (1952) ("[R]egulation of business entrusted to a particular agency [is] secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."); *ASARCO, Inc. v. OSHA*, 746 F.2d 483, 490 (9th Cir. 1984) (stipulating that an agency has "leeway where its findings must be made on the frontiers of scientific knowledge," including in environmental contexts (citations omitted)). Indeed, one reason for the growth of administrative agencies and their primacy in specialized areas is that the designated agency can staff up with scientists or other experts, *see Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) ("[A]n agency must have discretion to rely on the reasonable opinions of its own qualified experts."), and give a rational basis for its decisions, *see McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008). This approach is particularly beneficial in areas like environmental law that rely heavily on agency scientific judgments. *See, e.g.*, *Mont. Sulphur & Chem. Co. v. U.S. EPA*, 666 F.3d 1174, 1183 (9th Cir. 2012).

Our caselaw further explains that a rulemaking agency is allowed to "rely on its experience, even without having quantified it in the form of a study." *Sacora*, 628 F.3d

at 1069; *see Peck v. Thomas*, 697 F.3d 767, 776 (9th Cir. 2012) (holding that an agency "is entitled to invoke its experience as a justification for [a] rule"). Stated differently, any common sense and predictive judgments undergirding a rule promulgated by an agency may properly be attributed to the agency's specialized subject-matter expertise. *See FCC v. Fox Television Stations*, 556 U.S. 502, 521 (2009); *Phoenix Herpetological Soc'y v. U.S. Fish & Wildlife Serv.*, 998 F.3d 999, 1006 (D.C. Cir. 2021). This principle of administrative law applies with particular force where, as here, the "agency's predictive judgment (which merits deference) makes entire sense." *Fox Television Stations*, 556 U.S. at 521. In such contexts, the agency need only articulate a rational basis for the disputed decision or rule. *See Arrington v. Daniels*, 516 F.3d 1106, 1114 (9th Cir. 2008); *accord Dep't of Com.*, 139 S. Ct. at 2570–71 (holding that, where available evidence required a "weighing of incommensurables under conditions of uncertainty," the agency had satisfied its legal obligation to "consider the evidence and give reasons for [the agency's] chosen course of action"); *Sacora*, 628 F.3d at 1069 (stipulating that the APA does not require an agency to "support its conclusions with empirical research" during the administrative rulemaking process).

Applying these principles, it is significant that coyotes, lynx, and wolves are all wary animals that occur in low densities in the Skilak WRA, which extends across a relatively small land area within the Kenai Refuge. 81 Fed. Reg. 27037–38. The State approved sport hunting of these species in the Skilak WRA because this area is close to major population centers and highly accessible, inviting an inference that the hunting of coyotes, lynx, and wolves will be sufficiently popular to the point where this recreational activity would likely create hunting pressure on these

species. *See* 81 Fed. Reg. 27038–39. And the record further confirms that the combination of "easy access and liberal harvest strategies" may adversely affect Alaskan lynx and wolf populations. The agency logically concluded from this information that hunting of coyotes, lynx, and wolves would likely affect their behavior and reduce their density in the Skilak WRA. 81 Fed. Reg. 27038. These changes would conflict with FWS' management objectives for the Skilak WRA by greatly "degrad[ing] opportunities for wildlife observation, photography, and environmental education and interpretation." *Id*. It stands to reason that hunting and killing members of highly dispersed species like coyotes, lynx, and wolves within a confined land area such as the Skilak WRA would greatly reduce opportunities to observe those three species in the Skilak WRA. *See id*. Because there is a rational basis for the Kenai Rule's ban on the hunting of coyotes, lynx, and wolves in the Skilak WRA, *see Arrington*, 516 F.3d at 1114, which was an "exercise in logic rather than clairvoyance," *see Fox Television Stations*, 556 U.S. at 521, this prohibition is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise," and we have no reason to grant relief on this basis, *see Kalispel Tribe*, 999 F.3d at 688.

### b.

Safari Club urges that the record defeats FWS' finding that hunting of coyotes, lynx, and wolves in the Skilak WRA will reduce their observability there. This argument relies on: (1) a 2007 compatibility determination (CD) that hunting has little effect on most wildlife, (2) FWS allowing hunting of other species in the Skilak WRA, 50 C.F.R. § 36.39(i)(6)(iii)–(iv); and (3) the Board's finding that hunting coyotes, lynx, and wolves in the Skilak WRA will not limit their observability there.

None of these points supports Safari Club. The 2007 CD is irrelevant because it pertains to the hunting program in effect at the time, which did not include coyotes, lynx, and wolves in the Skilak WRA. Nor is hunting of other species relevant to whether hunting coyotes, lynx, and wolves in the Skilak WRA will make them less observable there. And the Board's judgment regarding the effect of hunting on coyotes, lynx, and wolves in the Skilak WRA is irrelevant. Agencies have discretion to rely on their own expertise, *see Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010), and where, as here, there is little data related to a contested agency action, opposing discussion that "is itself highly speculative" is insufficient to defeat disputed agency assumptions and conclusions, *see Greenpeace Action v. Franklin*, 14 F.3d 1324, 1336 (9th Cir. 1992).

**c.**

Safari Club contests the Kenai Rule on the basis that FWS did not explain its changed reason for banning coyote, lynx, and wolf hunting in the Skilak WRA. Per Safari Club, this hunting restriction was initially grounded in preemption of predator control, but the final Kenai Rule predicated it on minimization of conflict between refuge uses and public safety. We reject these arguments because Safari Club mischaracterizes the record.

In 2013, FWS informed the Board that hunting of coyotes, lynx, and wolves in the Skilak WRA conflicted with FWS' long-standing management objectives and current management plan for the area. 78 Fed. Reg. 66063. Since the mid-1980s, the agency's management plans for the Skilak WRA have prioritized environmental education and wildlife viewing, and FWS has restricted hunting and trapping in the area so "wildlife would become more abundant, less wary, and more easily observed." 81 Fed.

Reg. 27038. The final Kenai Rule banned the hunting of coyotes, lynx, and wolves within the Skilak WRA for the same reason, to facilitate wildlife viewing, and was adopted to ensure consistency with the 2007 management plan for the area. 81 Fed. Reg. 27039. Given this consistency in FWS' rationale for banning hunting of coyotes, lynx, and wolves in the Skilak WRA, reversal of the summary judgment order is unwarranted.

**d.**

Safari Club seeks reversal of the summary judgment order because the district court improperly imposed upon the State and Safari Club the burden of identifying the evidence or data in the record that FWS ignored in justifying its ban on coyote, lynx, and wolf hunting in the Skilak WRA. In the alternative, Safari Club asserts that, even if it had to identify materials ignored by FWS, it carried this burden by citing a supplemental EA for the 1985 Kenai Refuge conservation plan and two letters from the State to FWS regarding development of a Skilak WRA conservation plan. These contentions are unsupported by the law or the record.

To the extent that Safari Club chose to challenge the Kenai Rule as arbitrary and capricious because the agency did not address contrary record evidence, Safari Club had to support its arguments by specifically identifying the allegedly ignored record evidence for the district court. Otherwise, Safari Club's contentions on this point would consist of bare assertions unsupported by evidence in the record, which cannot survive summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B) (noting that, at the summary judgment stage, parties must support claims by "citing to particular parts of materials in the record," or showing that the cited materials cannot create a genuine dispute of material fact for trial).

Safari Club nevertheless mischaracterizes the supplemental EA for the 1985 Kenai Refuge conservation plan, which defines lynx and wolves as wilderness-dependent species and states that "[i]ncreased recreational use would have negligible impacts over most of this area, but could result in some displacement of wilderness-dependent wildlife from the Skilak [WRA]." This supports, rather than defeats, FWS' conclusion that the hunting of coyotes, lynx, and wolves in the Skilak WRA would reduce opportunities for the public to view these species therein. 81 Fed. Reg. 27038. Safari Club's briefing and the administrative record also undercut its claim that FWS ignored this supplemental EA in enacting the final Kenai Rule. Safari Club describes this supplemental EA as "attached to" the 1985 Kenai Refuge conservation plan, and the final Kenai Rule cites to this 1985 conservation plan three times. *See* 81 Fed. Reg. 27031, 27038, 27039. In this context, we cannot, as Safari Club urges, vacate the Kenai Rule on the basis that FWS improperly ignored the supplemental EA for the 1985 Kenai Refuge conservation plan in enacting this rule. 81 Fed. Reg. 27031.

Safari Club's discussion of two letters from the State to FWS regarding the development of the 2007 management plan and 2010 conservation plan for the Skilak WRA is not persuasive because these documents are not part of the administrative record for the final Kenai Rule, a fact Safari Club concedes. *Powell*, 395 F.3d at 1029–30. Nor do we credit Safari Club's claim that these documents should have been in the administrative record.

"[A] court reviewing an agency's action may examine extra-record evidence only in limited circumstances that are narrowly construed and applied." *Goffney v. Becerra*, 995 F.3d 737, 747–48 (9th Cir. 2021) (cleaned up). These

circumstances exist where: (1) admission of extra-record evidence is necessary to ascertain whether the agency considered all relevant factors and explained its decision; (2) the agency relied on documents not in the record; (3) clarification of technical matter is needed; or (4) the agency acted in bad faith. *Powell*, 395 F.3d at 1030. Safari Club sets out no colorable arguments that any of these four circumstances are present here. It urges supplementation of the administrative record because: (1) the district court erroneously required Safari Club to identify evidence that FWS ignored in enacting the Skilak WRA aspect of the Kenai Rule; (2) the Skilak WRA element of the Kenai Rule is invalid for lack of supporting data; and (3) the letters from the State to FWS contain data showing that hunting of coyotes, lynx, and wolves in the Skilak WRA would not reduce opportunities to view those species therein. We have already explained that the first two contentions are incorrect. Nor do the letters cited by Safari Club contain any data as to the impact of hunting of coyotes, lynx, and wolves in the Skilak WRA on the observability of those species in the Skilak WRA. We decline to supplement the administrative record here because Safari Club sets out no grounds for doing so. *See Goffney*, 995 F.3d at 747–48. And agency actions benefit from a presumption of regularity, meaning courts must "presume that [the] agency properly designated the Administrative Record absent clear evidence to the contrary." *Id*. at 748. Safari Club identifies no such clear evidence, so we must presume that FWS properly defined the administrative record. *See id*. As a result, we will not consider Safari Club's extra-record evidence. *See id*.

**iii.**

Safari Club finally claims that enactment of the Kenai Rule was procedurally improper because FWS did not make

necessary predicate findings that the baiting of brown bears and the hunting of coyotes, lynx, and wolves in the Skilak WRA are incompatible with refuge purposes. This assertion relies on a 2007 compatibility determination (CD) in which FWS classified hunting of brown bears and furbearers, which Safari Club defines as "predators," as a compatible use of the Kenai Refuge. Safari Club further notes that the 2007 CD deemed black bear baiting a compatible use of the Kenai Refuge and treats this conclusion as applicable to brown bears.

But ANILCA does not require FWS to follow any formal procedures or issue any findings before regulating human uses of the Kenai Refuge. *See* ANILCA § 304(b). FWS may exercise this power based on various factors including compatibility with refuge purposes, public health and safety, and resource protection. 50 C.F.R. § 36.42(b). FWS addressed all of these factors in the Kenai Rule. 81 Fed. Reg. 27035–39. And, although FWS must give advance notice, conduct public hearings, and publish its decision in the Federal Register before issuing a hunting restriction or permanent closure, FWS complied with these procedures, so reversal on procedural grounds is unwarranted. *See* 50 C.F.R. § 36.42(e); 81 Fed. Reg. 27032; 78 Fed. Reg. 66061–64.

In any case, Safari Club's reliance on the 2007 CD is unavailing because it states that hunting is a compatible use of the Kenai Refuge subject to any stipulations needed to ensure compatibility. These stipulations included the restrictions on brown bear baiting and hunting in the Skilak WRA "for visitor safety [or] to protect other values such as promoting wildlife viewing and photography." FWS' codification of these restrictions in the Kenai Rule is consistent with this CD. 81 Fed. Reg. 27039; 78 Fed. Reg.

66063. The agency would otherwise have neglected its statutory duty to manage the Kenai Refuge in line with the purpose of that refuge and its management plans. ANILCA §§ 303(4)(B)(i); 304(b); 304(g)(3). We reject Safari Club's request to disturb the district court's summary judgment order on grounds relating to the 2007 CD for these reasons.

### D. The NEPA Claim

The State and Safari Club set out a two-part NEPA argument. They first assert that the Kenai Rule changed the environmental status quo in the Kenai Refuge such that NEPA review is required. Second, the State and Safari Club claim that FWS improperly fulfilled its NEPA obligations for the Kenai Rule through categorical exclusions (CE). We reject this NEPA claim of the State and Safari Club.

Even assuming NEPA's procedures apply to the Kenai Rule,[1] "[a]n agency satisfies NEPA if it applies its categorical exclusions and determines that neither an EA nor an EIS is required, so long as the application of the exclusions to the facts of the particular action is not arbitrary and capricious." *Bicycle Trails Councils of Marin v. Babbitt*, 82 F.3d 1445, 1456 n.5 (9th Cir. 1996). The disputed parts of the Kenai Rule codified longstanding constraints on

---

[1] The government asserts that the Kenai Rule maintained the environmental status quo and NEPA is inapplicable because "NEPA procedures do not apply to federal actions that maintain the environmental status quo." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1114 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). We need not address this issue because it is unnecessary to resolve this case. And the district court's grant of summary judgment on this basis does not control because we may affirm "on any ground supported by the record." *Oyama v. Univ. of Haw.*, 813 F.3d 850, 860 (9th Cir. 2015) (cleaned up).

hunting in the Kenai Refuge, 81 Fed. Reg. 27035, 27038; 80 Fed. Reg. 29279, and the fact that these limitations changed from state to federal restrictions did not alter the permitted levels of use in the Kenai Refuge.  In this context, FWS sensibly decided that the Kenai Rule fits a CE for "issuance of special regulations for public use of [FWS]-managed land, which maintain essentially the permitted level of use and do not continue a level of use that has resulted in adverse environmental impacts."  81 Fed. Reg. 27033.  No basis for reversal exists here.  *See Bicycle Trails*, 82 F.3d at 1456 n.5; *Cal. v. Norton*, 311 F.3d 1162, 1176 (9th Cir. 2002) ("In many instances, a brief statement that a categorical exclusion is being invoked will suffice [to comply with NEPA]."); *Nat'l Tr. for Historic Pres. v. Dole*, 828 F.2d 776, 781 (D.C. Cir. 1987) ("By definition, CE's are categories of actions that have been predetermined not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances.").

The State and Safari Club urge us to hold otherwise because "extraordinary circumstances" required an EIS or EA for the Kenai Rule.  We disagree.  The State and Safari Club incorrectly suggest that their opposition to the Kenai Rule and the ensuing public controversy is an extraordinary circumstance that triggered FWS' obligation to prepare an EIS or EA.  "Mere opposition to an action does not, by itself, create a controversy within the meaning of NEPA regulations."  *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1011 (9th Cir. 2020).  "A project is highly controversial if there is a substantial dispute about the size, nature, or effect of the major Federal action rather than the existence of opposition to a use."  *Bark v. U.S. Forest Serv.*, 958 F.3d 865, 870 (9th Cir. 2020) (cleaned up).  No documents cited by the State and Safari Club indicate that

the disputed parts of the Kenai Rule have highly controversial, uncertain, or unique environmental effects, so reversal is unjustified for lack of any "substantial evidence in the record that exceptions to the [CE] may apply." *Norton*, 311 F.3d at 1176; *see Am. Wild Horse*, 963 F.3d at 1008 ("NEPA regulations do not anticipate the need for an EIS [or EA] anytime there is some uncertainty.").

In the alternative, the State and Safari Club seek remand of the Kenai Rule to FWS for NEPA analysis because FWS did not adequately explain its application of the CE for regulations that maintain existing levels of use of FWS-managed lands, or sufficiently justify its conclusion that no extraordinary circumstances are present. We will not grant relief on this basis because, to the extent that any such errors may exist, they were harmless for the reasons previously stated. *See* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error [in reviewing agency decisions]."); *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1104–05 (9th Cir. 2016); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1090–91 (9th Cir. 2014).

## V. CONCLUSION

The district court properly entered summary judgment for FWS on all claims.

**AFFIRMED.**